UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
    Plaintiff,

v.

DAY & ZIMMERMAN NPS, INC.,
    Defendant.

No. 15-cv-01416 (VAB)

**RULING ON MOTION TO DISMISS**

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), brings this action against Defendant, Day & Zimmerman NPS, Inc. ("DZNPS"), alleging violations of the Americans with Disabilities Act ("ADA"). Defendant has moved to dismiss the Complaint [Doc. No. 1] under Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, Defendant's Motion to Dismiss [Doc. No. 13] is DENIED. Plaintiff's claims of retaliation and interference under the ADA may proceed. This Ruling is without prejudice to Defendant raising the issues of the availability of damages and a jury trial for the claims again at a later time.

**I.    BACKGROUND**

EEOC alleges that, since at least June 2014, DZNPS has engaged in unlawful employment practices with respect to a group of electricians hired to work at the Millstone Power Station in Waterford, Connecticut, in violation of Sections 503(a) and 503(b) of the ADA. Section 503(a) prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

1

[the ADA]." 42 U.S.C. § 12203(a). Section 503(b) makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b).

Specifically, EEOC allegations focus on Gregory Marsh, one of DZNPS's electricians. DZNPS hired Mr. Marsh, a member of Local 35 of the International Brotherhood of Electrical Workers ("Local 35"), in September 2012 to work at the Millstone Power Station. In October 2012, Mr. Marsh filed a charge of discrimination with EEOC, alleging that DZNPS failed to accommodate his disability reasonably and unlawfully terminated his employment. In March 2014, EEOC sought information from DZNPS as part of its investigation of Mr. Marsh's charge, including the names and contact information of other electricians who had worked for DZNPS at the Millstone Power Station in the fall of 2012.

In June 2014, before providing the requested information to EEOC, DZNPS sent a letter (the "June 2014 Letter") to approximately 146 individuals, all of whom were members of Local 35 and all of whom had worked, or continued to work, for DZNPS. In the June 2014 Letter, DZNPS identified Mr. Marsh by name and indicated that he had filed a charge of discrimination on the basis of disability. The letter identified Mr. Marsh's union local, the medical restrictions on his ability to work, and the accommodation he had requested. It further informed the recipients of their right to refuse to speak to EEOC investigator and offered them the option to have DZNPS counsel present if they chose to speak to EEOC. EEOC alleges that this letter constitutes retaliation against Mr. Marsh for opposing conduct made unlawful by the ADA. EEOC further alleges that the letter interfered with Mr. Marsh and the approximately 146

recipients of the letter in their the exercise or enjoyment of rights protected by the ADA, including the right to communicate with EEOC, the right to participate in an EEOC investigation, and the right to file a charge of discrimination with EEOC.

On May 20, 2015, EEOC issued to DZNPS a Letter of Determination finding reasonable cause to believe that the ADA had been violated and inviting DZNPS to engage in informal methods of conciliation with EEOC to endeavor to eliminate the allegedly unlawful employment practices and provide appropriate relief. The parties, however, did not resolve the matter. As a result, EEOC filed the Complaint initiating this litigation on September 28, 2015.

## II.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citations omitted). When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678.  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557 (2007).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## III. DISCUSSION

Essentially, Defendant asks this Court to find that the June 2014 Letter provides insufficient evidence to create a genuine issue of material fact as to Plaintiff's ADA claims.  However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court concludes that, construing the Complaint in the light most favorable to Plaintiff, its allegations are sufficient to state a plausible claim for violation of Sections 503(a) and 503(b) of the ADA.

### A. Retaliation Claim

Plaintiff alleges that Defendant unlawfully retaliated against Mr. Marsh for his filing a charge of discrimination with the EEOC.  Section 503(a) of the ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

"A prima facie case of retaliation under the ADA is made up of the following elements: (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999). However, "a plaintiff is not required to plead a *prima facie* case . . . to defeat a motion to dismiss. Rather, because a temporary 'presumption' of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015).

To plead a retaliation claim sufficiently in an employment discrimination context, the Second Circuit has held that "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Id.* at 90.

Defendant argues that the ADA retaliation claim should be dismissed on both prongs. First, Defendant argues that Plaintiff has not alleged that Defendant took any adverse employment action against Mr. Marsh. Second, Defendant argues that, even if Plaintiff plausibly alleged an adverse employment action, Plaintiff has not alleged facts showing that the action was caused by Mr. Marsh's protected activity. At this early stage of the case, Defendant's arguments fail. The Court cannot conclude as a matter of law that the June 2014 Letter does not constitute an adverse employment action and that it was not sent because of Mr. Marsh's discrimination charge.

To determine whether something "could be found to constitute an adverse employment action" for purposes of an ADA retaliation claim, "the key inquiry is whether the effect of

5

defendants' decision was materially adverse." *Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 90 (2d Cir. 2010). "'[A]dverse actions' in the retaliation context are defined more broadly than in the discrimination context. For an allegedly retaliatory action to be materially adverse, the plaintiff must show that the action 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Lewis v. Boehringer Ingelheim Pharm., Inc.*, 79 F. Supp. 3d 394, 413 (D. Conn. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Furthermore, "some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011).

Here, the parties agree that Defendant sent a letter to approximately 146 fellow members of Mr. Marsh's union, and that in the letter, Defendant identified Mr. Marsh by name as having filed a charge of disability discrimination, identified Mr. Marsh's union local, identified the medical restrictions placed on Mr. Marsh's ability to work, and identified the accommodation Mr. Marsh sought. Routinely, courts have held that, when an employer disseminates an employee's administrative charge of discrimination to the employee's colleagues, a reasonable factfinder could determine that such conduct constitutes an adverse employment action. *See, e.g.*, *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (denying summary judgment on ADA retaliation claim because a jury could believe the posting of employee's discrimination complaint on employer's intranet could "chill a reasonable employee from further protected activity"); *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015) (holding that listing plaintiff's name in publicly available SEC filings and referring to her discrimination complaint as "meritless" constituted materially adverse employment action because "an employee's decision to file an EEOC complaint might be negatively viewed by

future employers"); *Booth v. Pasco Cty., Fla.*, 829 F. Supp. 2d 1180, 1192, 1202 (M.D. Fla. 2011) (reasonable juror could conclude that, if employer approved and endorsed union communication identifying plaintiff by name, calling his EEOC charges "frivolous," and stated that union might have to raise additional dues in order to pay for lawsuit, the posting of the communication would dissuade a reasonable worker from making a charge of discrimination because it is foreseeable that it "would provoke anger from union members" and result in "social ostracism and associated problems"); *Ray v. Ropes & Gray LLP*, 961 F. Supp. 2d 344, 359-60 (D. Mass. 2013), *aff'd*, 799 F.3d 99 (1st Cir. 2015) (providing EEOC determination letter with sensitive personal information to a website was adverse employment action because "threat of dissemination of derogatory private information, even if true, would likely deter any reasonable employee from pursuing a complaint against his employer").

Plaintiff also alleges that the June 2014 Letter was sent "because he filed a charge of discrimination." Compl. ¶ 17. "While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994) (denying motion to dismiss retaliation claim where "allegations provide a chronology of events from which an inference can be drawn that actions taken by [d]efendants were motivated by or substantially caused by" plaintiffs' protected activities).

Here, Plaintiff alleges that Defendant sent the letter three months after it had contacted Defendant to request names and contact information for other electricians who had worked for Defendant in the fall of 2012. Defendant counters that it sent the letter seventeen months after Mr. Marsh had filed his initial discrimination charge with the EEOC. However, the period

7

between the initial administrative filing and the alleged adverse employment action "is not the only relevant timeframe." *Greengrass*, 776 F.3d at 486 (noting that employer "did not become aware of the EEOC's intention to seriously pursue [plaintiff's] claim until . . . the agency informed [the employer] it would be taking interviews," and "[t]hus, a reasonable jury could find that [employer] decided to retaliate against [employee] not when she filed her charge, but when [employer] saw that the EEOC was taking the charge seriously").

Courts have found a three-month gap to provide sufficient temporal proximity to satisfy the causation prong. *See, e.g.*, *id.* (finding three months to be "suspicious timing"); *Hopkins v. Bridgeport Bd. of Educ.*, 834 F. Supp. 2d 58, 67 (D. Conn. 2011) ("three month period could allow for an inference of causation" in retaliation claim). "The Second Circuit and the Courts of this District have found a causal connection" where there were even longer gaps but it was plausible that there was no earlier opportunity to retaliate. *Blanco v. Brogan*, 620 F. Supp. 2d 546, 557 (S.D.N.Y. 2009) (collecting cases). Here, it is plausible that the first opportunity to retaliate against Mr. Marsh, whom they had already terminated, was when the EEOC provided a list of fellow union members to whom Defendant could disseminate the potentially damaging EEOC charge.

Accordingly, the Court cannot conclude as a matter of law that Defendant's disclosure of the details of Mr. Marsh's EEOC disability discrimination charge in the June 2014 Letter could not plausibly have been a retaliatory act in violation of Mr. Marsh's rights under the ADA.

### B.     Interference Claims

Section 503(b) of the ADA provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other

8

>individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).  Neither the Supreme Court nor the Second Circuit has yet outlined a test for an interference claim under the ADA.  As one court noted, "[c]ase law interpreting § 503(b) is sparse.  The plain words of the statute, however, preclude a party from intimidating or coercing another party not to exercise his rights under the ADA, as well as barring interference against a person who has exercised his rights under the ADA." *Breimhorst v. Educ. Testing Serv.*, No. 99-cv-3387, 2000 WL 34510621, at *7, 2000 U.S. Dist. LEXIS 23363, at *19 (N.D. Cal. Mar. 27, 2000).  The Second Circuit has, in at least one case, allowed an ADA interference claim to proceed, without analysis, in conjunction with an ADA retaliation claim that it found was sufficiently supported to survive a motion for summary judgment.  *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222-224 (2d Cir. 2001) (holding that both § 503(a) and § 503(b) claims survived summary judgment because "plaintiff has come forward with sufficient evidence to establish a prima facie case of retaliation").  The Third Circuit has observed that Section 503(b) "arguably sweeps more broadly than" Section 503(a).  *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 789 (3d Cir. 1998); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003) ("[T]he ADA's interference provision . . . protects a broader class of persons against less clearly defined wrongs" than its anti-retaliation provision.)

Plaintiff asserts interference claims on behalf of Mr. Marsh and on behalf of the approximately 146 current and former employees of Defendant who received the June 2014 Letter.  Plaintiff argues that the letter was intended to coerce, intimidate, threaten, or interfere with these individuals' in the exercise of their rights under the ADA to communicate with the EEOC concerning potential unlawful discrimination.  Based on the plain language of the statute, such conduct is sufficient to state a plausible ADA interference claim.

9

While it is true that Plaintiff has not alleged any direct evidence of Defendant's intent behind the June 2014 Letter, the issue of an employer's intent is a question of fact that cannot be resolved on a motion to dismiss. *Cf. Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (summary judgment "ordinarily inappropriate" in employment discrimination cases because "intent and state of mind are in dispute" and "a trial court should exercise caution when granting summary judgment to an employer where . . . its intent is a genuine factual issue"). Moreover, as discussed above, the disclosure of sensitive personal information about an individual could well dissuade that individual from making or supporting a charge of discrimination under the ADA. Therefore, the Court reasonably could infer that the letter could have the effect of interfering with or intimidating Mr. Marsh and the letter's recipients with respect to communicating with the EEOC about potential disability discrimination by Defendant.

In addition, courts have noted that the ADA's anti-interference provision is similar to a provision in the National Labor Relations Act, 29 U.S.C. § 158(1) (the "NLRA"), and that "interpretations of the NLRA can serve as a useful guide to interpreting similar language in the ADA, as both are 'part of a wider statutory scheme to protect employees in the workplace nationwide.'" *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 570 (3d Cir. 2002) (quoting *McKennon v. Nashville Banner Pub'g Co.*, 513 U.S. 352, 357 (1995)). In the context of the analogous NLRA provision, the Supreme Court observed that "the economic dependence of the employees on their employers" creates a "necessary tendency of the former . . . to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." *N. L. R. B. v. Gissel Packing Co.*, 395 U.S. 575, 617-18 (1969). As a result, the Court held that, in that case, it was reasonable to conclude "that the intended and understood import of [the employer's] message was not to predict that unionization would inevitably cause the plant to

10

close but to threaten to throw employees out of work regardless of the economic realities." *Id.* at 619.  Having to address this matter simply on the allegations before it, this Court cannot conclude that the content of the June 2014 Letter does not support a similarly interfering import.

Defendant also argues that the interference claims should be dismissed because Plaintiff has not alleged that any of the letter's recipients were harmed by the letter, even if it had been intended to coerce, intimidate, threaten, or interfere with their exercise of rights under the ADA. However, looking again at the NLRA context, the Second Circuit explicitly has held that an employer's actions violate the NLRA's anti-interference provision "if, under all the existing circumstances, the conduct has a reasonable tendency to coerce or intimidate employees, regardless of whether they are actually coerced." *New York Univ. Med. Ctr. v. N.L.R.B.*, 156 F.3d 405, 410 (2d Cir. 1998).  Applying such a standard to this case, this Court cannot find as a matter of law that the allegations in the Complaint do not render it plausible that the June 2014 Letter had "a reasonable tendency to coerce or intimidate" the individuals who received it.

Accordingly, the Court cannot dismiss Plaintiff's claims that Defendant's alleged actions violated Section 503(b) of the ADA.

### C. Prayer for Relief

Defendant argues that Plaintiff's claims for damages and injunctive relief should be dismissed.  Defendant argues that the ADA does not authorize compensatory or punitive damages for retaliation and interference claims.  It further argues that the claims for injunctive relief should be dismissed because DZNPS has done nothing that requires corrective action on its part.  At this stage of the proceedings, the Court will not dismiss either of these requests for relief.

On the latter point, the Court's denial of Defendant's motion to dismiss the retaliation and interference claims is dispositive. The Court cannot conclude based purely on the allegations that no harm has occurred that requires the types of remediation requested by Plaintiff.

As for the issue of damages, it is an open question in this Circuit whether a plaintiff can seek compensatory or punitive damages for violations of Section 503 of the ADA. *See Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 362 (E.D.N.Y. 2008). While Section 503 contains no specific enforcement or remedial provision of its own, it states that "[t]he remedies and procedures available under" 42 U.S.C. §§ 12117, 12133, and 12188 "shall be available to aggrieved persons for violations" of the anti-retaliation and anti-interference provisions of the ADA. 42 U.S.C. § 12203(c). In the employment discrimination context, the relevant provision is 42 U.S.C. § 12117, "which in turn adopts the remedies set forth in Title VII, specifically 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981a(a)(2)." *Edwards v. Brookhaven Sci. Associates, LLC*, 390 F. Supp. 2d 225, 235 (E.D.N.Y. 2005) (citing 42 U.S.C. § 12117). This provision indicates that the remedies for violation of Section 503 "are coextensive with the remedies available in a private cause of action brought under Title VII." *Id*.

Section 1981a provides that in an action "against a respondent who engaged in unlawful intentional discrimination" under certain provisions of the ADA, "the complaining party may recover compensatory and punitive damages." 42 U.S.C. § 1981a(a)(2). While Section 503 is not one of the enumerated sections, 42 U.S.C. § 1981a(a)(1) provides that Title VII employment discrimination plaintiffs "may recover compensatory and punitive damages." Because 42 U.S.C. §§ 12203(c) and 12117 indicate that the remedies available to those seeking relief for violations of the anti-retaliation and anti-interference provisions of the ADA are the same as those available

under Title VII, it follows that such claimants may recover compensatory and punitive damages. Following similar reasoning, some courts have found that Section 503 does authorize actions for damages. *See Edwards*, 390 F. Supp. 2d at 233-36; *Baker v. Windsor Republic Doors*, 635 F. Supp. 2d 765, 766-71 (W.D. Tenn. 2009), *aff'd*, 414 F. App'x 764 (6th Cir. 2011).

In the absence of binding Supreme Court or Second Circuit case law, this Court shall defer its final ruling on the issue of the availability of compensatory and punitive damages under Section 503 of the ADA. This issue has divided courts within this Circuit, *compare Edwards*, 390 F.Supp.2d at 233-36 (finding damages available) *with Infantolino*, 582 F. Supp. 2d at 362-63 (finding damages unavailable), and while the Second Circuit has affirmed at least one judgment awarding damages in an ADA retaliation case, it did so without analyzing the issue, *see Muller v. Costello*, 187 F.3d 298 (2d Cir.1999). With such uncertainty regarding how the Second Circuit would rule, the prudent approach is to allow the damages claims to proceed at this stage, without prejudice to raising the issue again, if and when a motion for summary judgment is filed or at some later time. *Cf. Cox v. Eichler*, 765 F. Supp. 601, 610-11 (N.D. Cal. 1990) (denying without prejudice motion to strike prayer for punitive damages where availability of such relief under ERISA was open question of law).

By taking this approach, the Court will not have unduly wasted the time and resources of the parties if the Second Circuit were to decide to allow such a claim, as such an occurrence would—in the event this Court had granted the motion to dismiss solely as to the requests for damages[1]—necessitate re-opening discovery on this issue. *Cf.* Wright & Miller, Fed. Prac. & Proc. § 1373 (3d ed.) (factors district court should consider in deferring determination of a motion to dismiss under Rule 12(i) include, *inter alia*, "avoid[ing] costly and protracted litigation," "expense and delay," "the difficulty or likelihood of arriving at a meaningful result of

---

[1] The Court takes no position at this time on its ultimate resolution of this issue if it is presented again.

13

the question presented by the motion," and "the possibility that the issue to be decided on the hearing is so interwoven with the merits of the case . . . that a postponement until trial is desirable"). Because Plaintiff has stated plausible claims for ADA retaliation and interference, for now, the case will proceed regardless of whether damages are available as a remedy for the alleged violations. Therefore, Defendant is not prejudiced by the Court's decision not to rule on the matter definitively at this time.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's claims for injunctive relief and denies, without prejudice to renewal, Defendant's motion to dismiss Plaintiff's claims for damages.

### C. Jury Trial Demand

Defendant also seeks to strike Plaintiff's demand for a jury trial, arguing that Plaintiff is entitled only to equitable relief in this case. Because, as discussed *supra*, the Court has not ruled that compensatory and punitive damages are unavailable for Plaintiff's claims in this action, Defendant's argument fails at this time. Therefore, to the extent Defendant seeks to strike Plaintiff's jury demand, its Motion to Dismiss is denied without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss [Doc. No. 13]. Plaintiff's claims under Sections 503(a) and 503(b) of the ADA shall proceed. Defendant may again raise the issues of the availability of damages and a jury trial for the claims at a later time.

SO ORDERED at Bridgeport, Connecticut, this 12th day of April, 2016.

                                                        /s/ Victor A. Bolden
                                                        Victor A. Bolden
                                                        United States District Judge