IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | ) | |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | CIVIL ACTION NO. 3:15-cv-01416 (VAB) |
| | ) | |
| Plaintiff, | ) | |
| | ) | Filed: November 18, 2016 |
| v. | ) | |
| | ) | |
| DAY & ZIMMERMANN NPS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

        Defendant Supplies Union Labor to Employers
        in the Power Industry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
        Marsh's Employment & Charge of Discrimination . . . . . . . . . . . . . . . . . . .  3
        EEOC's Investigation of Marsh's Charge . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
        Defendant's June 2014 Letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
        Defendant's Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

III.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

        A.  Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

        A.  Disputed Issues of Material Fact Preclude Entry of Summary
            Judgment on EEOC's Claim Against Defendant for Violation
            of Section 503(a) of the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

            1.  A jury could conclude that the threat of publication of a one's
                name, complaint of discrimination, disability and medical restrictions
                to colleagues might well dissuade a reasonable person from making
                a charge of disability discrimination . . . . . . . . . . . . . . . . . . . . . . . . .  9

                a.  Federal courts, applying the *Burlington Northern* standard,
                    have repeatedly recognized that publication of information
                    related to an employee's administrative charge may be
                    materially adverse, satisfying the adverse action element of
                    a retaliation claim . . . . . . . . . . . . . . . . . . . . . . . . . .  .. . . . . . . . . .  13

            2.  The substance and timing of the letter demonstrate that it was
                causally connected to Marsh's charge . . . . . . . . . . . . .  .. . . . . . . . . .  16

            3.  A Jury Could Find that Defendant's Justifications for the Letter
                Are Pretextual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

        B.  Defendant's Conduct Constitutes Unlawful Interference in Violation
            of Section 503(b) of the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

**1.** Defendant's letter constituted interference with rights secured by the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

**2.** An employee need not be actively exercising his or her ADA-protected rights to be a victim of interference under Section 503(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

C.   Interference with ADA Rights Is Not Protected by the First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

D.   There is no applicable "litigation privilege" to engage in retaliation or interference with the exercise of ADA rights. . . . . . . . . . . . . . . .   31

E.   Monetary and Injunctive Relief is Available, and EEOC has Article III Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

1.   Injunctive Relief Is Available . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

2. Compensatory and Punitive Damages Are Available, As Well . . . . .   34

a.   EEOC may seek monetary relief for Marsh pursuant to Plaintiff's section 503(a) claim . . . . . . . . . . . . . . . . . . . . . . . . .. . . .   35

**IV. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

# **TABLE OF AUTHORITIES**

## **Cases**

*Alvarado v. Cajun Operating Co.,* 588 F.3d 1261 (9th Cir. 2009)................................. 34

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)................................... 6

*Austen v. Catterton Partners V, LP,* 831 F. Supp. 2d 559 (D. Conn. 2011)............................... 29

*Bachelder v. Am. W. Airlines, Inc.,* 259 F. 3d 1112 (9th Cir. 2001)............................... 24

*Baker v. Windsor Republic Doors,* 635 F. Supp. 2d 765 (W.D. Tenn. 2009) ............................ 36

*Bingham v. Oregon Sch. Activities Ass'n,* 24 F. Supp. 2d 1110 (D. Or. 1998) ............................ 25

*Bonnell v. Lorenzo,* 241 F.3d 800 (6th Cir. 2001) ....................................... 29

*Booth v. Pasco Cty., Fla.,* 829 F. Supp. 2d 1180, 1192 (M.D. Fla. 2011).................................... 14

*Breimhorst v. Educ. Testing Serv.,* No. Civ.A. 99–3387, 2000 WL 34510621 (N.D. Cal. Mar. 27, 2000) ............................................... 27

*Bridgeport Guardians, Inc. v. City of Bridgeport*, 933 F.2d 1140, 1149 (2d Cir. 1991)............. 33

*Brown v. City of Tucson,* 336 F.3d 1181 (9th Cir. 2003)...................................... 24

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) .......................... 11

*CBOCS West, Inc. v. Humphries,* 553 U.S. 442 (2008)................................................. 36

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...................................... 6

*Coleman v. Blue Cross Blue Shield of Kan.,* 487 F. Supp. 2d 1225 (D. Kan. 2007)................... 25

*Conn. Gen. Stat.* § 31-128f ................................................................ 21

*Craig v. Stafford Construction, Inc.,* 271 Conn. 78 (2004) ........................................ 32

*Doe v. Kohn Nast & Graf, P.C.,* 866 F. Supp. 190 (E.D. Pa. 1994)............................. 28

*EEOC v. Board of Governors*, the Seventh Circuit held that the provision in a collective

bargaining that terminates an employees' right to access a grievance procedure whenever the

iv

employee initiates a claim in either an administrative or judicial forum was retaliatory on its face. *See* 957 F.2d 424, 431 (7th Cir. 1992) ................................................................ 23

*EEOC v. Dolgencorp, LLC,* No. 13-cv-04307, 2015 WL 2148394 (N.D. Ill. May 5, 2015) ....... 16

*EEOC v. JBS USA, LLC,* No. 8:10CV318, 2012 WL 169981 (D. Neb. Jan. 19, 2012) ............... 16

*EEOC v. L.B. Foster,* 123 F.3d 746 (3d Cir. 1997) ...................................................................... 26

*EEOC v. Morgan Stanley & Co.,* 206 F. Supp. 2d 559 (S.D.N.Y. 2002) ...................................... 30

*EEOC v. OhioHealth Corp.,* 2:13-cv-780, 2014 WL 5323068 (S.D. Ohio, Oct. 17, 2014) ......... 16

*Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546 (2005) .................................................... 37

*Farrar v. Town of Stratford,* 537 F. Supp. 2d 332 (D. Conn. 2008) ............................................ 19

*Fogleman v. Mercy Hosp., Inc.*, 283 F. 3d 561, 570 (3d Cir. 2002) ............................................. 24

*Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561 (3d Cir. 2002) ......................................... 26, 27, 28

*Franklin v. Local 2 of the Sheet Metal Workers Int'l Ass'n,* 565 F.3d 508 (8th Cir. 2009) ......... 22

*Gomez v. Laidlaw Transit, Inc.,* 455 F. Supp. 2d 81 (D. Conn. 2006) ........................................... 9

*Gomez-Perez v. Potter,* 553 U.S. 474 (2008) ............................................................................... 36

*Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111 (2d Cir. 2000) ................................................... 19

*Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93 (2d Cir. 2010) ................................................ 18

*Graziadio v. Culinary Inst. of America*, 817 F. 3d 415, 430 (2d Cir. 2016) ................................ 20

*Greengrass v. Int'l Monetary Sys. Ltd.,* 776 F.3d 481 (7th Cir. 2015) .................................. 13, 17

*Gulf Oil Comp. v. Bernard,* 452 U.S. 89 (1981) .......................................................................... 30

*Halliburton, Inc. v. Admin. Review Bd.,* 771 F. 3d 254 (5th Cir. 2014) ...................................... 16

*Hashimoto v. Dalton,* 118 F. 3d 671 (9th Cir. 1997) ................................................................... 26

*Hicks v. Baines,* 593 F.3d 159 (2d Cir. 2010) ....................................................................... 10, 12

*Hopkins v. Bridgeport Bd. of Educ.,* 834 F. Supp. 2d 58 (D. Conn. 2011) .................................. 18

*Howard v. City of New York,* 602 Fed. Appx. 545 (2d Cir. 2015)................................................. 18

*Husser v. New York City Dep't of Educ.,* No. 12-CV-6095 MKB JO, 2015 WL 5774741

    (E.D.N.Y. Sept. 30, 2015)................................................................................... 10, 15, 18

*In re Initial Pub. Offering Sec. Litig.,* 499 F. Supp. 2d 415 (S.D.N.Y. 2007) .............................. 30

*Infantolino v. Joint Indus. Bd. of Elec. Indus.,* 582 F. Supp. 2d 351 (E.D.N.Y. 2008) ............... 34

*John Doe, Inc. v. Mukasey,* 549 F.3d 861 (2d Cir. 2008) ............................................................. 29

*Kleiner v. First Nat. Bank of Atlanta,* 751 F. 2d 1193 (11th Cir. 1985) ....................................... 30

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors*

    *Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)) ................................................................... 7

*Kramer v. Banc of Am. Sec. LLC,* 355 F.3d 961 (7th Cir. 2004).................................................. 34

*Lewis v. Boehringer Ingelheim Pharm., Inc.,* 79 F. Supp. 3d 394 (D. Conn. 2015)....................... 9

*Lovejoy-Wilson v. Noco Motor Fuels, Inc., 242 F.Supp.2d 236 (W.D.N.Y. 2003)* ....................... 34

*Marchuk v. Faruqi & Faruqi, LLP,* No. 13-1669, 2015 U.S. Dist. LEXIS 9806 (S.D.N.Y. Jan.

    28, 2015) ........................................................................................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).............................. 7

*McMahan v. UMG Mfg. & Logistics, Inc.,* No. 1:06-cv-1149, 2008 WL 906152 (S.D. Ind. Mar.

    31, 2008) ........................................................................................................... 27

*McMiller v. Precision Metal Products, Inc.,* No. 3:13-CV-577 VAB, 2015 WL 4886460 (D.

    Conn. Aug. 17, 2015)........................................................................................ 10

*Mendez v. Enecon Northeast Applied Polymer Sys.,* No. 14-6736, 2015 U.S. Dist. LEXIS 90794

    (E.D.N.Y. July 13, 2015) ................................................................................. 29

*Mogenhan v. Napolitano,* 613 F. 3d 1162 (D.C. Cir. 2010) .................................................. 13, 16

*Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778 (3d Cir. 1998) ......................................... 23

*Muller v. Costello,* 187 F. 3d 298 (2d Cir. 1999) ........................................................... 34

*Munck v. New Haven Sav. Bank,* 251 F. Supp. 2d 1078 (D. Conn. 2003) ...................... 27

*New York Univ. Med. Ctr. v. NLRB,* 156 F.3d 405 (2d Cir. 1998) .......................... 25, 26

*NLRB v. Gissel Packing Co.,* 395 U.S. 575 (1969) ................................................... 25, 30

*O'Hazo v. Bristol-Burlington Health Dist.,* 599 F. Supp. 2d 242 ................................... 19

*Ragusa v. Malverne Union Free Sch. Dist.,* 381 Fed. Appx. 85 (2d Cir. 2010) ............... 9, 15, 18

*Ray v. Ropes & Gray LLP,* 961 F. Supp. 2d 344 (D. Mass. 2013) ................................. 14

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.133, 147 (2000) ......................... 20

*Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997) .................................................... 12, 37

*Rolfe v. Lawrence & Mem'l Hosp.,* No. 3:10-CV-80 RNC, 2013 WL 5435507 (D. Conn. Sept.
30, 2013) ...................................................................................................... 15

*Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) ................................ 7

*Sista v. CDC Ixis North Am., Inc.,* 445 F.3d 161 (2d Cir. 2006) .................................... 8

*Smith v. United States,* 508 U.S. 223 (1993) ................................................................ 38

*Spector v. Bd. of Trustees of Community-Technical Colleges,* 463 F. Supp. 2d 234 (D. Conn.
2006) ........................................................................................................... 31

*Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010) ...................... 32

*Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F. 3d 556 (2d Cir. 2011) ........... 10

*Turner v. The Saloon, Ltd.,* 595 F.3d 679 (7th Cir. 2010) .......................................... 27

*Urtubia v. B.A. Victory Corp.,* 857 F. Supp. 2d 476 (S.D.N.Y. 2012) ........................... 30

*Zann Kwan v. Andalex Grp.* LLC, 737 F.3d 834, 846 (2d Cir. 2013) ........................... 20

## **Statutes**

42 U.S.C. § 1981 ......................................................................................................... 36

42 U.S.C. § 1981a(a)(2) ........................................................................................... 36

42 U.S.C. § 2000e-5 .......................................................................................... 33, 36

42 U.S.C. § 12203(a) .............................................................................................. 12

42 U.S.C. § 12112(d)(3)(B) ................................................................................... 14

42 U.S.C. § 12117 ...................................................................................... 33, 35, 36

42 U.S.C. § 12203(a) .............................................................................................. 12

ADA § 503(a) ................................................................................................. *passim*

ADA § 503(b) ................................................................................................. *passim*

Civil Rights Act of 1991 ....................................................................................... 37

NLRA § 8(a)(1) ................................................................................................ 30, 31

## **Other Authorities**

Mark C. Weber, *Workplace Harassment Claims under the Americans with Disabilities Act: A*

   *New Interpretation,* 14 Stan. L. & Pol'y Rev. 241 (2003) ....................................... 37

## I.      INTRODUCTION

There is ample evidence to permit a jury to conclude that the letter Defendant sent to 146 of Charles Marsh's co-workers and foremen violates the anti-retaliation and anti-interference provisions of the Americans with Disabilities Act ("ADA").  During the EEOC investigation of Marsh's charge of disability discrimination, the EEOC investigator requested contact information for 146 of Marsh's colleagues.  In response, Defendant sent letters to those 146 individuals identifying Marsh by name, indicating which union local he belonged to, and revealing that he had filed a charge of discrimination against the company.  The letter went on to inform these individuals, some of whom had influence over his future employment opportunities, of Marsh's medical restrictions and that Marsh has a disability.  The letter's timing and its express reference to Marsh's charge leave little doubt that the letter would not have been sent but for Marsh's filing of the charge.

A jury could also conclude that the letter constitutes interference with the ADA rights of both Marsh and the letter's recipients. In making an example of Marsh — by publicizing his complaint and private medical information to a broad group of coworkers — the letter would plainly tend to coerce or intimidate a reasonable person from following in Marsh's footsteps and engaging in statutorily protected activity.[1]

Finally, Defendant's contention that the EEOC lacks standing is without merit. It cannot be said as a matter of law that injunctive relief or compensatory and punitive damages are unavailable.

---

[1] Indeed, with respect to the interference claim, EEOC believes that no jury could reasonably find otherwise.  Accordingly, EEOC has moved for partial summary judgment on that claim.  *See* ECF Dkt. 70.

1

Accordingly, Defendant's motion for summary judgment should be denied.

## II.   FACTUAL BACKGROUND

**Defendant Supplies Union Labor to Employers in the Power Industry**

Day & Zimmermann NPS, Inc. ("Defendant") provides unionized, craft labor to its clients in the power industry, including the Millstone nuclear power station ("Millstone"). Plaintiff's Local Civil Rule 56(a)2 Responsive Statement of Facts (EEOC Facts), ¶¶ 1-5.

When the nuclear reactors at Millstone are shut down for scheduled maintenance ("outages"), the plants hire additional craft labor through union hiring halls to assist with the work.   EEOC Facts ¶¶ 4-6.  Defendant can employ as many as 600 temporary craft workers during an outage.   EEOC Facts ¶ 138.   During the Millstone outage that occurred in the fall of 2012, Defendant hired approximately 150 electricians.  EEOC Facts ¶ 27 .

When it needs to hire electricians at Millstone, Defendant contacts the International Brotherhood of Electrical Workers ("IBEW") Local 90 hiring hall; if Local 90 does not have enough electricians to meet the demand, electricians from other area locals, including IBEW Local 35, are referred to Defendant to fill the remaining need.  EEOC Facts ¶ 23.  Union members cannot solicit work directly with Defendant; they rely on the referral system through their union for work.  EEOC Facts ¶ 139.  Work during outages is coveted for the opportunity it gives IBEW members to earn higher wages.  EEOC Facts ¶ 141.

When the outage is over, and the maintenance work is complete, the temporary craft workers are laid off by Defendant.  These individuals are often re-hired for subsequent outages. EEOC Facts ¶ 142  Defendant will begin to lay off temporary workers as the outage winds down. EEOC Facts ¶ 142.  Sometimes the decisions about whom to lay off are based on worker skills, sometimes they are based on what work remains to be done, and sometimes the decisions are

personal. EEOC Facts ¶ 143. Foremen may be involved in the decision of when to lay off a worker. EEOC Facts ¶ 144.

## Marsh's Employment & Charge of Discrimination

Greg Marsh, an electrician and member of IBEW Local 35, was referred to work at Millstone during the fall of 2012 by IBEW Local 90. Historically, Marsh received approximately 80% of his referrals for work from Local 35, and 20% of his referrals from other locals, including Local 90. EEOC Facts ¶ 145.

Marsh reported to work for Defendant at Millstone and attended the plant's training program. EEOC Facts ¶ 146. After he began training, he provided a note from his doctor to one of Defendant's representatives. EEOC Facts ¶ 147. The noted stated that, because of his medical condition, Marsh should not work around radiation, chemicals, or exposure. *Id.* In response, Defendant told Marsh his services were no longer needed. EEOC Facts ¶ 148.

On or around October 23, 2012, Marsh filed a charge of discrimination with EEOC, alleging that Defendant discriminated against him because of his disability in violation of the ADA. EEOC Facts ¶ 149.

## EEOC's Investigation of Marsh's Charge

Defendant viewed the EEOC's investigation of the Marsh charge as an adverse proceeding. EEOC Facts ¶ 150. On March 4, 2014, as part of its investigation, EEOC requested the names and contact information of individuals employed by Defendant as electricians at Millstone during the fall 2012 outage. EEOC Facts ¶ 151. Defendant did not want to provide this list of potential witnesses to the EEOC, labeling the EEOC's request "a fishing expedition." EEOC Facts ¶ 152.

**Defendant's June 2014 Letter**

Before eventually providing the requested names and contact information to the EEOC investigator, and while the EEOC investigation was pending, Defendant sent a letter to the 146 potential witnesses who had worked at Millstone during the fall 2012 outage — Marsh's co-workers, foremen, and fellow union members.  EEOC Facts ¶¶ 153-161

The recipients of the letter were members of IBEW Local 90 and Local 35, some of whom were foremen or held other, lead roles on union jobs.  EEOC Facts ¶ 154.

The June 17, 2014 letter ("the Letter") was on Defendant's letterhead and signed by Lisa Anne Cooney, the company's Senior Labor & Employment Counsel.  EEOC Facts ¶ 155.  In the letter, Defendant identified Marsh by name and  as a member of the IBEW Local 35 who was referred by the Local for work during the Fall 2012 outage at Millstone.  *Id.*  The letter revealed that Marsh had filed a charge of disability discrimination against Defendant and that Marsh's doctor had told him that that he could not work around radiation, chemicals or exposure.[2]  EEOC Facts ¶ 156. The letter also told Marsh's colleagues that, in connection with Marsh's charge, the EEOC asked Defendant to provide a list of all electricians it employed at the Millstone Plant during the Fall 2012 outage, including contact information and dates of employment.  EEOC Facts ¶ 157. The letter also advised the witnesses that they could refuse to talk to the EEOC and could have Defendant's outside counsel present during the EEOC interview.  EEOC Facts ¶ 158. Defendant offered the name and telephone number of counsel at Littler Mendelson for that

---

[2] There is no evidence that Marsh consented to Defendant's release of information about his medical condition, medical restrictions, or the fact that he had filed a charge of discrimination, or that he was even notified of the contents of the letter until after it had been mailed to his coworkers.  EEOC filings.  Marsh did not learn about the letter or its contents until after it was mailed to his coworkers.

purpose.  EEOC Facts ¶ 159. The letter ended with Defendant's caution that it hoped that the matter would be resolved expeditiously.  EEOC Facts ¶ 160 .

Before the letter was sent, Marsh's co-workers did not know that he had a medical condition, that his doctor had imposed restrictions as a result of his medical conditions.  EEOC Facts ¶ 161. Nor did they know that Marsh had filed a charge of disability discrimination against Defendant.   EEOC Facts ¶ 162.

Defendant offers various reasons for the timing, content, and purpose of the letter. Defendant states that it sent the letter to avoid "business interruptions," including telephone calls from individuals who might be contacted by EEOC.  EEOC Facts ¶ 163.  Defendant alleges that the letter was designed to respond to questions the company assumed they would have, including whether or not they would be paid for their time, and whether or not the company would pay for a lawyer to attend the interview.  EEOC Facts ¶ ¶ 164-165. Tellingly, the letter does not address any of the questions that Defendant now claims it was intended to answer.  EEOC Facts ¶¶ 166-167.

Cooney testified that the letter would help Defendant determine what information the witnesses could provide about Marsh's discrimination claim.  EEOC Facts ¶165 . Cooney concedes, nonetheless, that she had "no reason to believe" that the letter's recipients knew anything about Marsh's charge and other than sending the letter, Defendant did not attempt to obtain information from the potential witnesses.  EEOC Facts ¶ 166.  Nor did the letter actually ask its recipients to inform the company whether they had any relevant information.  EEOC Facts ¶ 167.

Defendant admits that it did not actually believe it had a legal obligation to inform the potential witnesses that the company had provided their contact information to the EEOC.

5

EEOC Facts ¶ 168.  Defendant also concedes that an EEOC investigator has a legitimate interest in selecting which employer witnesses to interview as part of an investigation, and understands that an investigator has no way to make those selections and contact those witnesses without receiving identifying information from the employer.  EEOC Facts ¶ 169.

Although the letter identified Marsh by name ,Cooney admits that it was not necessary for all witnesses interviewed as part of an investigation of a claim of discrimination to know the identity of the individual making an allegation.  EEOC Facts ¶  170.

**Defendant's Policies**

Defendant has EEOC and other workplace policies.  These policies are made available to permanent, corporate employees through a company website and are published in a handbook, referred to as the work rules, for union and temporary employees, like Marsh.  EEOC Facts ¶ 170.  One such policy addresses  Defendant's  "Reasonable Accommodation Process."  EEOC Facts ¶ _13   Defendant's policy provides that

> Medical information obtained in connection with the reasonable accommodation process will be kept confidential.  This means that all medical information that D&Z NPS obtains in connection with a request for reasonable accommodation will be kept in files separate from an individual's personnel file.

EEOC Facts ¶ 13 .

## III.   LEGAL STANDARD

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted if all the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of

material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim") (internal quotation marks omitted).

If the moving party meets this burden, the non-moving party must "set out specific facts showing a genuine issue for trial" using affidavits or other evidence, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co*., 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp*., 758 F.2d 839, 840 (2d Cir. 1985)).

## IV.   ARGUMENT

A reasonable jury could conclude that Defendant retaliated against Marsh because he filed an EEOC charge when Defendant publicized the content of Marsh's charge, the fact that he has a disability, the nature of his medical restrictions and his requested accommodations — all identifying him by name and union local.  Defendant's conduct – taken in reaction to Marsh's filing of a charge with EEOC and EEOC's ensuing investigation of that charge – would dissuade a reasonable person from reporting discrimination to the EEOC.  Defendant's letter sent a clear

message to Marsh's co-workers, all of whom were potential witnesses, that complaints to EEOC about Defendant would be met with widespread publication of both the fact of a person's complaint and of personal details that would otherwise have been kept private (such as a requested accommodation of a disability).  A jury could infer that, in stating that employees could refuse to speak with the Commission, or could request the presence of Defendant's counsel at any meeting, a reasonable employee would understand that Defendant's preference was that he not participate freely in EEOC's investigation.

The letter also constitutes interference with ADA-protected rights, in violation of § 503(b) of the ADA.  As with retaliation, the standard for interference is an objective one.  A jury could conclude that Defendant's letter would have a chilling effect on a reasonable person's exercise of the rights guaranteed by the ADA, including the right to give testimony to EEOC, to otherwise participate in the investigation of a charge, or to make a complaint of one's own.

As set forth below and in the EEOC's motion for partial summary judgment, Defendant's motion should be denied.

### F.  Disputed Issues of Material Fact Preclude Entry of Summary Judgment on EEOC's Claim Against Defendant for Violation of Section 503(a) of the ADA.

Retaliation claims under § 503(a) of the ADA employ the same prima facie case as retaliation claims under Title VII: EEOC must demonstrate that (a) Marsh engaged in protected activity; (b) Defendant was aware of his protected activity; (c) Defendant "took adverse action against" Marsh; and (d) a causal connection existed between the protected activity and the adverse action.  *Sista v. CDC Ixis North Am., Inc.,* 445 F.3d 161, 177 (2d Cir. 2006).  Defendant does not dispute the fact that the filing of a charge of discrimination with the EEOC is a protected activity or that Defendant was aware of this protected activity.  ECF Dkt. 74 at 21.  Defendant moves for summary judgment on grounds that EEOC fails to satisfy the third and

fourth prongs of a prima facie claim of retaliation, namely that Marsh has not suffered a materially adverse action and that EEOC cannot show causation.  Defendant raised the same arguments in its motion to dismiss.  There, this Court ruled that it "cannot conclude as a matter of law that the June 2014 Letter does not constitute an adverse employment action and that it was not sent because of Mr. Marsh's discrimination charge."  ECF Dkt. 33 at 5.  The law has not changed since this Court denied Defendant's motion to dismiss.  Nothing in the record that has developed during discovery would somehow preclude a jury from concluding, based on the text of the letter, that the letter might well dissuade a reasonable person from making a complaint under the ADA and that it was causally related to Marsh's charge.  Accordingly, summary judgment as to EEOC's anti-retaliation claim is inappropriate and must be denied.

> **1. A jury could conclude that the threat of publication of a one's name, complaint of discrimination, disability and medical restrictions to colleagues might well dissuade a reasonable person from making a charge of disability discrimination.**

Because of the similarity between the language in § 503(a) of the ADA and Title VII's anti-retaliation provision, courts have interpreted these two provisions uniformly.  *See, e.g., Ragusa v. Malverne Union Free Sch. Dist.,* 381 Fed. Appx. 85, 90 (2d Cir. 2010).  Courts apply to ADA retaliation claims the same standard for adverse action adopted by the Supreme Court for Title VII retaliation claims in *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).  *See Lewis v. Boehringer Ingelheim Pharm., Inc.,* 79 F. Supp. 3d 394, 413 (D. Conn. 2015) (noting that adverse actions in the retaliation context of the ADA are "defined more broadly than the discrimination context"); *Gomez v. Laidlaw Transit, Inc.,* 455 F. Supp. 2d 81, 89 (D. Conn. 2006).  Under the standard announced in *Burlington Northern,* an action need not affect the terms and conditions of employment to be "materially adverse" for the purposes of a retaliation claim.  *Burlington Northern,* 548 U.S. at 67.  Rather, the test is one of deterrence:  an adverse

action exists for purposes of retaliation if "the challenged action ... well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 69 (internal citations omitted).

As the Second Circuit has noted, when determining whether or not conduct would deter a reasonable person from exercising his rights, "[c]ontext matters, as some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F. 3d 556, 568 (2d Cir. 2011); *see also Rivera,* 743 F.3d at 26-27 (reversing, in part, district court's award of summary judgment and finding that supervisor's comment that filing an EEOC charge "could get [him] fired" constituted adverse action under *Burlington Northern* standard).  "There is also no bright-line test for determining what constitutes an adverse employment action." *McMiller v. Precision Metal Products, Inc.,* No. 3:13-CV-577 VAB, 2015 U.S. Dist. LEXIS 107785 at *8 (D. Conn. Aug. 17, 2015).  Thus, "the scope of actions that may be materially adverse for purposes of a […] retaliation claim is broader than those actions prohibited by [the statute's] anti-discrimination provisions and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Husser v. New York City Dep't of Educ.,* No. 12-CV-6095 MKB JO, 137 F. Supp. 3d 253 (E.D.N.Y. 2015) *quoting Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir. 2010) (discussing retaliation claims under the analogous provision of Title VII).

Under this standard, a reasonable jury could conclude that Defendant's letter would deter a reasonable person from freely exercising his rights under the ADA, because it made an example of Marsh by airing otherwise private information about him.  The letter was sent to 146 of Marsh's co-workers who were members of Marsh's union local, it identified Marsh by name and as a member of Local 35, it stated that the basis of his charge was disability discrimination,

and it disclosed the medical limitations placed on Marsh by his doctor because of his disability. EEOC Facts ¶¶ 154, 156 . Drawing all inferences in EEOC's favor, as is required for purposes of this motion, a jury could conclude that the letter "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The message sent by Defendant was clear: those who file charges with EEOC risk having their complaint and its details, including sensitive medical information, broadly exposed to other members of their union, on which they rely for future job referrals. This plainly could make a reasonable person think twice about exercising his rights under the ADA.

While a jury could draw that conclusion from the face of the letter alone, other details reinforce the deterrent potential of the letter. It is undisputed that some of the 146 recipients of Defendant's June 2014 letter held foreman positions. EEOC Facts ¶ 144. Foremen hold the power to determine which workers are laid off and when. Id. Marsh testified that after his coworkers received the letter, he was confronted at work by by a member of his Local that he had never before met, Mike Stebbins. EEOC Facts ¶ 171. Stebbins said to Marsh, "I hear you sue everybody you work for." EEOC Facts ¶¶ 172. At the time of the exchange, Stebbins' uncle was a foreman. EEOC Facts ¶ 173. Marsh testified that since Defendant's letter, he is usually one of the first workers to be laid off from work. EEOC Facts ¶ 174.

Defendant argues, incorrectly, that the letter cannot constitute retaliation because at the time it was sent, Marsh was not actively employed by Defendant. ECF Dkt. 74 at 21-22. But Defendant itself admits that its proposed requirement of an active "employment connection" at the moment of the retaliatory act cannot be found in the statute or the controlling jurisprudence. Rather, Defendant argues instead that this requirement is implicit. ECF Dkt. 74 at 21. To the

contrary, the retaliation provision, housed in Title V of the ADA rather than in the employment

provisions of Title I, broadly states that "[n]o person" shall engage in retaliation.  *See* 42 U.S.C.

§ 12203(a).  By its plain language, the provision is not limited to employers, much less current

employers.

Defendant's argument ignores the actual language of the statute and instead relies on

*Marchuk v. Faruqi & Faruqi, LLP,* No. 13-1669, 2015 U.S. Dist. LEXIS 9806 (S.D.N.Y. Jan.

28, 2015), a case that is readily distinguishable and fails to conform to controlling precedent. The

*Marchuk* court's decision to dismiss a Title VII retaliation claim, to the extent it relied on the fact

that the complained of adverse action occurred after plaintiff's employment with Defendant

terminated, *see id.* at *13-14, is in direct contradiction of Second Circuit law "that Title VII's

anti-discrimination and anti-retaliation provisions 'are not coterminous'; anti-retaliation

protection is broader and 'extends beyond workplace-related or employment-related retaliatory

acts and harm.'" *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir. 2010) ("Prior decisions of this

Circuit that limit unlawful retaliation to actions that affect the terms and conditions of

employment … no longer represent the state of the law.") (internal citations omitted) (emphasis

added).

The Supreme Court has noted that reading the anti-retaliation provision in Title VII to

exclude post-employment conduct "would be destructive of [the] purpose of the anti-retaliation

provision" because it would allow "an employer to be able to retaliate with impunity against an

entire class of acts" including discriminatory termination."  As the Supreme Court has held, the

statute's prohibition on retaliation applies to former, as well as current, employees.  *See*

*Robinson v. Shell Oil Co.,* 519 U.S. 337, 346 (1997) (holding that Title VII protects former

employees from post-employment retaliation); *see also Hopkins v. Bridgeport Bd. of Educ.,* 834

F. Supp. 2d 58, 66 (D. Conn. 2011) (failure to provide employment references constitutes adverse action for purposes of ADA retaliation claim).

> **b. Federal courts, applying the *Burlington Northern* standard, have repeatedly recognized that publication of information related to an employee's administrative charge may be materially adverse, satisfying the adverse action element of a retaliation claim.**

The D.C. Circuit, applying the *Burlington* standard to a retaliation claim brought by a federal employee under the analogous Rehabilitation Act, held that where the employee's supervisor "posted her EEO complaint on the [agency] intranet, where her fellow employees could and did access it," the adverse action element was met.  *Mogenhan v. Napolitano,* 613 F. 3d 1162, 1166 (D.C. Cir. 2010) (reversing district court's grant of summary judgment and finding that a jury could "believe that broadcasting an EEO complaint would have such an effect – and so chill a reasonable employee from further protected activity.").  Other courts have similarly held that publicly identifying an employee as the individual making a charge against the employer may constitute retaliation, since it could dissuade a reasonable person from making such a complaint.[3]  In *Greengrass v. Int'l Monetary Sys. Ltd.,* 776 F.3d 481, 485 (7th Cir. 2015), the Seventh Circuit held that the employer's act of naming EEOC claimants in publicly available SEC filings and referring to the charge as "meritless" constituted an adverse action under Title VII because such conduct could "dissuade [] a reasonable worker from making or supporting a

---

[3] *See also Halliburton, Inc. v. Admin. Review Bd.,* 771 F. 3d 254, 262 (5th Cir. 2014) (applying *Burlington Northern* standard to retaliation claim brought under § 806 of Sarbanes-Oxley Act to find that employer's publication of complainant as whistleblower who filed complaint with SEC was conduct that would dissuade a reasonable worker from filing a complaint).  As the Fifth Circuit stated there: "when it is the boss that identifies one of his employees as the whistleblower who has brought an official investigation upon the department, as happened here, the boss could be read as sending a warning, granting his implied imprimatur on differential treatment of the employee, or otherwise expressing a sort of discontent from on high."  *Id.*

charge of discrimination."  In *Booth v. Pasco Cty., Fla.,* the court denied summary judgment to defendants on plaintiffs' retaliation claim, finding that where the employee alleged that the employer approved a union communication, sent to the employees' colleagues and fellow union members, that identified the plaintiffs by name and cast doubt on the merits of their EEOC charges, it was "entirely foreseeable" that such conduct would dissuade a reasonable worker from making a charge of discrimination, "[a]s no one volunteers for the role of social pariah." *See* 829 F. Supp. 2d 1180, 1192, 1202 (M.D. Fla. 2011).

Defendant argues that since it had no *legal* obligation to limit dissemination of information relating to Marsh's medical condition, there can be no adverse action that flows from the letter.  ECF Dkt. 74 at 19-21.  Defendant's assertion is wrong.  The dissemination of confidential medical information is a serious enough harm that it is limited by law in any number of contexts.  Among many obvious examples of laws protecting the confidentiality of medical information, the ADA itself restricts an employer's ability to disseminate information about an employees' medical condition and requires that such information be treated as confidential.  See 42 U.S.C. § 12112(d)(3)(B).

In *Ray v. Ropes & Gray LLP,* the court denied summary judgment on a Title VII retaliation claim, finding that the employer's disclosure of EEOC's determination letter on the underlying charge – which contained sensitive information about the plaintiff's performance and an investigation into alleged criminal conduct – was materially adverse for purposes of a retaliation claim. *See* 961 F. Supp. 2d 344, 359-60 (D. Mass. 2013).  This was so, the court concluded, even though the employer was under no other legal obligation to keep the Commission's determination confidential:

> [I]nsofar as Ropes claims that it was free to disseminate the
> determination letter containing sensitive information about Ray

> because it was 'not private,' the argument proves too much.  Even
> in the absence of any non-disclosure obligation, Title VII prohibits
> an employer from responding to protected activity by taking an
> action that would 'dissuade a reasonable worker from making or
> supporting a charge of discrimination.' … The threat of
> dissemination of derogatory private information, even if true,
> would likely deter any reasonable employee from pursuing a
> complaint against his employer.

*See Ray*, 961 F. Supp. 2d. at 359-60 (*citing Burlington Northern,* 548 U.S. at 68) (internal

quotations and citations omitted).

Finally, determining what constitutes an adverse action under the *Burlington Northern*

standard is driven by an analysis of the specific facts.  *See, e.g., Husser,* 2015 WL 5774741, at

*15 (whether or not employer's conduct was materially adverse was a "fact-intensive, context-

specific" question for the jury).  For example, in *Ragusa*, the Second Circuit reversed the district

court's grant of summary judgment for the employer, holding that a reasonable jury could

conclude that increasing plaintiff's teaching load in a manner that would make it more difficult

for her to succeed during her probationary period was materially adverse.  *Ragusa,* 381 Fed.

Appx. at 90.  Similarly, in *Rolfe v. Lawrence & Mem'l Hosp.,* the court held that the employer's

reassignment of a nurse to "float" to other units more often after her complaint could constitute

an adverse action under the ADA, despite the fact that "floating" was part of the nurse job

description.  *See* No. 3:10-CV-80 RNC, 2013 U.S. Dist. LEXIS 140400, at *6 (D. Conn. Sept.

30, 2013).

A reasonable jury, considering the letter as a whole, could easily reject Defendant's

assertion that the letter "simply alerted the Witnesses that it disclosed their contact information to

the EEOC." EEOC Facts ¶ 57.     The letter indisputably went beyond informing witnesses that

the employer had shared their contact information with EEOC:  it identified Charging Party by

name, it identified him as the individual who had filed the charge, it identified his union local, it

indicated that he had a disability and described the restrictions requested by his doctor.  EEOC

Facts ¶ 156.   *See Halliburton,* 771 F. 3d at 262 (where employer identifies complaining worker,

conduct can be understood to send a message of disapproval to company employees); *Mogenhan,*

613 F. 3d at 1166.[4]   A jury should decide whether, taken in context, Defendant sent the letter

when it did and included personal, superfluous details about Marsh in order to retaliate against

him for filing a charge of discrimination with the EEOC.  Defendant's motion should be denied

and the EEOC should be permitted to present its case to a jury.

**2.   The substance and timing of the letter demonstrate that it was causally connected to Marsh's charge.**

A jury would have no difficulty concluding that Marsh's charge was a but-for cause of

the letter, since the letter expressly refers to the charge and was sent in response to an effort to

investigate the charge.  Defendant sent the letter to Marsh's co-workers just three months after it

was learned that EEOC requested the information needed to reach out to them.  Defendant noted

when it was preparing to send the letter that it was doing so because "EEOC has informed D&Z

that they intend to further the investigation in support of" Marsh's claim.  DiSavino Dec. ¶ 7  .

---

[4] Defendant argues that, by filing this litigation, EEOC itself has also made information about
Marsh public.  This compares apples to oranges.  While federal district court litigation
necessarily makes some otherwise private information public, this case does so in order to
vindicate Marsh's rights, not to dissuade him from (and others) from exercising them.
Moreover, it is the *employer's* conduct, and not that of the Commission, that is at issue here.
*See, e.g., EEOC v. Dolgencorp, LLC,* No. 13-cv-04307, 2015 WL 2148394, at *4 (N.D. Ill. May
5, 2015) (EEOC's policies regarding background checks not relevant to litigation alleging
Defendant's own background check practices violated Title VII); *EEOC v. OhioHealth Corp.,*
2:13-cv-780, 2014 WL 5323068, at *4-5 (S.D. Ohio, Oct. 17, 2014) (denying request for
discovery, noting that "EEOC's own internal policies or practices as an employer" were not
relevant to the litigation); *EEOC v. JBS USA, LLC,* No. 8:10CV318, 2012 WL 169981, at *6 (D.
Neb. Jan. 19, 2012) (case against company did "not involve questions of whether the EEOC
failed to accommodate the religious practices of its employees").

The letter plainly would not have been sent had Marsh not filed a charge of discrimination with the EEOC.

Defendant's contention that causation cannot be shown because of the lack of close temporal proximity between Marsh's initial EEOC filing and the letter is misguided.  Defendant contends that the year-and-a-half between these two events is sufficient, by itself, to defeat causation and warrant summary judgment.  ECF Dkt.74 at 23.  Defendant's analysis misconstrues the timeline, including important, intervening events.[5]  Although Marsh's original charge was filed in October of 2012, just three months elapsed between the date of EEOC's first request for witness contact information and Defendant's letter publicizing Marsh's charge and details about his disability and medical condition.  DiSavino Dec. ¶ ¶ 6-7.

As the Seventh Circuit recently held, the date of the filing of a charge is not the only possible starting point for measuring temporal proximity.  *See Greengrass,* 776 F.3d at 486.  In *Greengrass*, the court held that the three months between the employer's receipt of EEOC's request to interview witnesses – which signaled the agency's "intention to seriously pursue" the charge – and the retaliatory action was suspicious timing and thus evidence of causation.  *Id.*[6] Thus, during the investigation of Marsh's charge, the temporal proximity of EEOC's request for witness contact information and Defendant's letter — three months — is evidence of a causation that a jury could decide to credit.  *See Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d

---

[5] The Court should reject Defendant's legally erroneous argument on this point for the same reasons that it rejected the argument when Defendant offered it in its motion to dismiss.  ECF Dkt. 33 at 8.

[6] As it is indisputable that there is a direct causal link between the charge and the actions taken to investigate the charge, retaliation undertaken because of an investigative step is, logically, also causally related to the charge.  But for the filing of the charge, neither the investigation nor any reaction to the investigation have occurred.

Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship"); *Ragusa,* 381 Fed. Appx. at 90; *Husser,* 2015 WL 5774741, at *16 (jury could infer causation where adverse action occurred within three months of report, issued by investigating state EEO agency, that supported plaintiff's complaint and created consequences for employer); *Hopkins,* 834 F. Supp. 2d at 67 (three month lapse between protected conduct and adverse action sufficient to show temporal proximity).

More fundamentally, though, Defendant overlooks the obvious:  The letter directly references Marsh's charge, and so a jury could easily conclude that, but for Marsh's filing of that charge, Defendant would not have sent the letter.  (Indeed, EEOC believes no reasonable jury could conclude otherwise.)  Defendant's argument conflates causation and temporal proximity. While temporal proximity is one type of *evidence* of causation, EEOC's burden is to show causation.  If there is other evidence of from which a jury can infer causation, there is no separate legal requirement for any particular degree of temporal proximity.  Thus, for example, if an employer told an employee that she was being fired "because of that charge you filed four years ago," this would conclusively show causation, even though there is no temporal proximity.

Thus Defendant is mistaken in its reliance on cases holding that the timing between the protected conduct and the adverse action must be very close where the plaintiff relies upon temporal proximity *alone* to establish causation,.  *See. Howard v. City of New York,* 602 Fed. Appx. 545, 549 (2d Cir. 2015) (at summary judgment, plaintiff offered only temporal proximity

of ten months between protected activity and adverse action as evidence of causation).[7]

Temporal proximity between EEOC's request for witness contact information and Defendant's letter is not the sole basis for inferring causation.  The *content* of Defendant's letter makes it obvious that, but for Marsh's charge, the letter would not have been sent.  DiSavino Dec.  ¶ 6. Moreover, a jury could infer, from the letter's gratuitous inclusion of details such as Marsh's union affiliation and information about his disability, that the letter was motivated by retaliatory animus.  Although animus is not required — the standard is causation — evidence of intent to retaliate is another way to show a causal connection between protected activity and an adverse action.  *See Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000) (evidence of animus against employee may establish causation); *Farrar v. Town of Stratford,* 537 F. Supp. 2d 332, 355 (D. Conn. 2008) (where plaintiff presented other evidence – beyond temporal proximity –demonstrating causal connection between protected conduct and adverse action, causation should be resolved by jury).

     Accordingly, there is ample evidence from which a jury could infer causation.

### 3.   A Jury Could Find that Defendant's Justifications for the Letter Are Pretextual

A jury could reasonably disbelieve the allegedly non-retaliatory explanations for the letter that Defendant has offered during this litigation.

     Once the Court finds that Defendant has provided evidence of a legitimate reason for its allegedly retaliatory conduct, the burden shifts back to EEOC to show that those reasons are

---

[7] Because of this, the remaining cases cited by Defendant on this point are distinguishable, as all relied solely on temporal proximity to establish the causation element. *See O'Hazo v. Bristol-Burlington Health Dist.,* 599 F. Supp. 2d 242, 262 (granting summary judgment to employer where more than 11 months lapsed between protected conduct and adverse action, and plaintiff put forth no other evidence of causation in support of retaliation claim).

pretextual.  Pretext may be shown "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action.  From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Graziadio v. Culinary Inst.* of *America*, 817 F. 3d 415, 430 (2d Cir. 2016) quoting *Zann Kwan v. Andalex Grp.* LLC, 737 F.3d 834, 846 (2d Cir. 2013). The Supreme Court has explained:

> Proof that the Defendant's explanation is unworthy of credence is…one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive …[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation especially since the employer is in the best position to put forth the actual reason for its decision.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.133, 147 (2000).

The record is replete with evidence of weaknesses, inconsistencies, contradictions and implausibilities which would permit a jury to disbelieve Defendant's proffered legitimate reasons for the timing and content of the letter and find instead that the letter was retaliatory.

Defendant asserts that it sent the letter "to prevent or minimize business disruption" by answering questions that it anticipated the workers would have when contacted by EEOC.  ECF Dkt. Entry 74 at 34.  Defendant further claims that the letter was sent to "avoid the need for the Company to have 146 individual conversations."  EEOC Facts ¶ 163.  A jury could reasonably find that these assertions are inconsistent with Defendant's contention that the letter was a way to *invite* the witnesses to contact the Company with information, a practice which it says "goes to the heart of a good factual investigation."  ECF Dkt. 74 at 20.  A jury may also find it significant that Defendant did not send the letter as part of an investigation.   EEOC Facts ¶ 166.  Defendant asserts that it was not the company's intent to offer legal counsel to the witnesses.  A jury could

discredit that assertion, given that the letter invited the witnesses to call the company's attorneys at Littler Mendleson directly if they wanted counsel to accompany them to their EEOC interview.  DiSavino Dec. ¶ 7.

Defendant also states that it would not have sent the letter if the Business Agent for Local 90 objected.  EEOC Facts ¶ 54.   A jury could conclude that is untrue, given that the email Defendant sent to the Business Agent simply asked that he provide his "comments and acknowledgement of [Defendant's] intent to send [the] letter."  EEOC Facts ¶ 53.

Defendant's disclosed personal medical information contained in Marsh's EEOC charge of discrimination is at odds with Defendant's own policies, which require that Defendant's employees keep confidential all medical information obtained in connection with the reasonable accommodation process.  EEOC Facts ¶ 13.

Defendant also contends that it wanted to alert the witnesses that it provided their name, telephone number and address to the EEOC because that information is confidential under state law.[8]  However, the statute relied on by Defendant specifically provides an exception where the information is provided in response "to a government audit or the investigation or defense of personnel-related complaints against the employer."  *Conn. Gen. Stat.* § 31-128f.  Moreover, the same statute prohibits the disclosure of "individually identifiable information contained in the … medical records of any employee…" without the written authorization of the employee.  *Id.* Given that Defendant did not seek Marsh's written authorization before releasing his information, a jury could disbelieve Defendant's suggestion that its actions were motivated by fidelity to this state statute.

---

[8] Moreover, it is elementary that state law does not itself provide a defense to the violation of a federal law, such as the ADA.

A jury could also simply find Defendant's proffered explanations for the letter implausible, given that the objectives Defendant now articulates could have been met with a far simpler letter that did not reveal Marsh's identity or medical information. Defendant could have simply informed the witnesses that the EEOC was conducting an investigation related to the company and may be contacting them shortly. Moreover, to allay any concerns on the witnesses' part, Defendant could have informed its employees of the confidential nature of EEOC investigations. *See* 29 C.F.R. § 1601.22. Defendant did not do this.

Defendant argues that summary judgment is nevertheless warranted because an employer must be able to conduct its own investigation of the charge, which necessarily requires disclosing "basic information to the Witnesses in order to conduct its factual investigation." ECF Dkt. 74 at 20. However, there is no evidence that Defendant made the disclosures at issue here as part of an investigation.

While Defendant suggests that the letter was consistent with its or Cooney's regular business practices, and that there is no evidence that Cooney harbored a "personal dislike" of Marsh, ECF Dkt. 74 at 27, none of those considerations relieves Defendant of liability if the elements of a claim for retaliation are satisfied. For example, in *Franklin v. Local 2 of the Sheet Metal Workers Int'l Ass'n,* the Eight Circuit reversed summary judgment for the union on the plaintiffs' retaliation claims where a union had a standing policy of announcing the names of members who had filed EEOC charges. *See* 565 F.3d 508, 521 (8th Cir. 2009). There, the plaintiffs alleged that the union local's practice of publicizing to its members the plaintiffs' names, claims and the related costs of litigating those claims was retaliatory. *Id.* The union argued that it had an obligation to inform its members of litigation-related costs and had always done so, entitling it to summary judgment. *Id.* The court rejected this argument: "Although

Local 2's prior practice and obligation to disclose expenses may justify what Local 2 did, the degree of Local 2's disclosures raises credibility issues and a potential reasonable inference of retaliation." *Id.* Similarly, in *EEOC v. Board of Governors*, the Seventh Circuit held that the provision in a collective bargaining that terminates an employees' right to access a grievance procedure whenever the employee initiates a claim in either an administrative or judicial forum was retaliatory on its face. *See* 957 F.2d 424, 431 (7th Cir. 1992). The Court was unpersuaded by the fact that the policy applied to filings that involved unprotected activity, such as a breach of contract claim, or that the policy lacked retaliatory intent. *Id.* at 430. The withdrawal of the plaintiff's grievance was materially adverse and was causally related to his protected activity of filing a charge with the EEOC; no more was required.

Likewise, a jury could conclude that Defendant's broad dissemination of Marsh's identity, complaint, and medical information meets the elements of a claim of retaliation, as it was causally related to Marsh's EEOC charge and would have dissuaded a reasonable employee from exercising such rights. Therefore, summary judgment on this claim should be denied.

### G. Defendant's Conduct Constitutes Unlawful Interference in Violation of Section 503(b) of the ADA.

Section 503(b) of the ADA prohibits interference with the rights protected by the ADA. *See* 42 U.S.C. § 12203(b). One court of appeals has stated that this section "arguably sweeps more broadly" that Section 503(a), the anti-retaliation provision.. *See Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778, 789 (3d Cir. 1998). Recognizing that §§ 503(a) and 503(b) contain different language, and provide distinct protections, many federal courts have concluded that ADA interference claims should not be analyzed under the standard for retaliation but should instead be guided by the interpretation of similar language in the Fair Housing Act ("FHA"), National Labor Relations Act ("NLRA") and Family Medical Leave Act ("FMLA"). *See, e.g.,*

*Brown v. City of Tucson,* 336 F.3d 1181, 1191 (9th Cir. 2003).  Thus, § 503(b) is violated when

an employer engages in conduct that tends to chill employees' freedom to exercise rights

protected by the ADA.  Any employee's rights under the ADA may be interfered with,

regardless of whether the employee is disabled or is actively engaged in asserting rights

protected under the statute (*e.g.*, seeking an accommodation).[9]  *Fogleman v. Mercy Hosp., Inc.*,

283 F. 3d 561, 570 (3d Cir. 2002)(the text of the anti-retaliation provision "does not expressly

limite a cause of action to the particular employee that engaged in protected activity").  As set

forth below and in EEOC's motion for partial summary judgment, the standard is satisfied here.

### 3.  Defendant's letter constituted interference with rights secured by the ADA.

Section 503(b) prohibits "interference" with rights protected by the ADA.  Consistent

with the plain meaning of that word, interference is understood as "any conduct that tends to

chill an employee's freedom to exercise his statutory rights."  *Brown v. City of Tucson,* 336 F. 3d

1181, 1191 (9th Cir. 2003) (internal citations omitted); *see also Bachelder v. Am. W. Airlines,*

*Inc.,* 259 F. 3d 1112, 1123-24 (9th Cir. 2001) (discussing FMLA's interference language in light

---

[9] Defendant cites *Brown v. City of Tucson* for the proposition that an ADA interference claim
should be evaluated by the same standard as a FHA interference claim, *see* ECF Dkt. 74 at 28,
but then simply disregards the interference standard actually applied in *Brown*.  (*Brown*'s
standard supports EEOC's argument.)  Instead, Defendant looks to a district court case from
Illinois that applies a different standard and requires a showing of intent.  *See id*. (citing *Deka v.
Countryside Ass'n for People with Disabilities, Inc.* 140 F. Supp 3d 698, 710 (N.D. Il. 2015)).
The *Deka* court, too, initially referred to the test for FHA test for interference discussed in
*Brown*, but then tacked on an intent requirement.  Some explanation for the intent requirement is
found in *Youngblood v.Prudential Ins. Co. of Am.*, in which the court referred to an intent to
discriminate to distinguish the employer's conduct from a motivation that is completely removed
from the statutory prohibition against discrimination; in *Youngblood*, that motivation was a
desire for higher profits.  *See* 706 F. Supp. 2d 831, 840 (M.D. Tenn. 2010).  The distinctions
raised in these decisions are without any textual basis in the statute or Second Circuit caselaw,
are not binding, and should not be followed.  The plain language of the statute should govern.

of interpretation of Section 8(a)(1) of the NLRA and finding that "attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights.").[10]  As one district court held, conduct that "clearly operates to dissuade disabled [individuals] from exercising their rights" under the act constitutes interference.  *Cf. Bingham v. Oregon Sch. Activities Ass'n,* 24 F. Supp. 2d 1110, 1118 (D. Or. 1998) (school athletic association rule that discouraged disabled students from bringing ADA challenge to association rules was ADA interference).

Analyzing the language of National Labor Relations Act ("NLRA"), the Second Circuit has repeatedly held that interference under Section 8(a)(1) of that statute is analyzed under an objective standard:  interference occurs "if, under all the existing circumstances, the conduct has a reasonable tendency to coerce or intimidate employees, <u>regardless of whether they are actually coerced</u>."  *New York Univ. Med. Ctr. v. NLRB,* 156 F.3d 405, 410 (2d Cir. 1998) (emphasis added).  In that context, assessment of the employer's statements to the workers "must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear."  *Id., citing NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617 (1969).

Applying this reasoning here, there can be no question that Defendant's conduct constitutes interference with rights conferred by the ADA, including the right to file a charge of discrimination and the right to participate in EEOC's investigation of that charge.  It is clear that

---

[10] Under the FMLA, courts have held that where "an employer provides a powerful disincentive" for exercising FMLA rights, such as taking leave, it constitutes interference under that statute. *See Coleman v. Blue Cross Blue Shield of Kan.,* 487 F. Supp. 2d 1225, 1245 (D. Kan. 2007).

what Defendant did to Marsh here — broadly disseminate information about his complaint, his medical restrictions, and other personal information to 146 co-workers and individuals with control over his future job opportunities — is conduct that has a reasonable tendency to coerce or intimidate employees not to file charges of their own.[11]  Defendant made clear that a consequence of communication with EEOC was that the company would widely publicize the individual's protected conduct, including sensitive information that could potentially interfere with the individual's future job prospects.  A jury could plainly conclude that this would tend to make a reasonable person think twice about following in Marsh's footsteps.

### 4. An employee need not be actively exercising his or her ADA-protected rights to be a victim of interference under Section 503(b).

The letter likewise constitutes interference with the rights of its 146 recipients as well. Unlike § 503(a), the text of § 503(b) "does not expressly limit a cause of action to the particular employee that engaged in protected activity."  *Fogleman,* 283 F.3d at 570.  The *Fogleman* court, relying on similar language in the NLRA, noted that "action taken against the third party

---

[11] Defendant argues that EEOC's interference claim should be dismissed because Marsh had already filed his charge (and, as such, his right to do so could not be interfered with) and because there is no evidence that any of the witnesses were discouraged from speaking with EEOC as a result of Defendant's letter.  *See* ECF Dkt. 74 at 29-30.  But this argument ignores the proper focus of this *objective* inquiry: whether the employer's conduct would have a reasonable tendency to chill protected conduct by a reasonable employee.  *See New York Univ. Med. Ctr.,* 156 F.3d at 410.  As with retaliation, which is also evaluated under an objective standard, the employer's efforts to interfere need not be successful with any *particular* employee in order to violate the act.  *Cf. EEOC v. L.B. Foster,* 123 F.3d 746, 754 n.4 (3d Cir. 1997) ("an employer who retaliates cannot escape liability merely because the retaliation falls short of its intended result.") *citing Hashimoto v. Dalton,* 118 F. 3d 671, 673 (9th Cir. 1997) ("There is little question that the dissemination of adverse employment references can constitute a violation of Title VII if motivated by discriminatory intent.  Thus, it is beside the point that [the employer's] dissemination of the negative job reference was not the reason Hashimoto did not get the job with the Army.").

employee can have the effect of coercing the employee [from] engaging in protected activity, and may also coerce other employees of the company from engaging in protected activity in the future." *Fogleman,* 283 F.3d at 571, n.5.  Additionally, there is broad agreement among federal courts that one need not be disabled within the meaning of the statute to be entitled to the benefit of Section 503(b)'s protections.  *See, e.g., Munck v. New Haven Sav. Bank,* 251 F. Supp. 2d 1078, 1087 (D. Conn. 2003) (husband who sought reasonable accommodation on his wife's behalf and was later terminated stated claim for violation of ADA's interference provision) (citing cases); *Turner v. The  Saloon, Ltd.,* 595 F.3d 679, 690 (7th Cir. 2010) (employee need not be disabled under ADA to assert claim for retaliation under the statute); *McMahan v. UMG Mfg. & Logistics, Inc.,* No. 1:06-cv-1149, 2008 WL 906152, at *8 (S.D. Ind. Mar. 31, 2008) (Section 503(b)'s protections extend to worker who alleged he was terminated for informing his co-worker that he believed the employer was discriminating against her because of her disability).

Defendant interfered with the rights of Marsh and each of the 146 witnesses who received a copy of the letter.  Importantly, § 503(b) prohibits an employer both from interfering with an employee who exercises rights under the statute and from interfering so as to prevent an individual from exercising ADA-protected rights.  *See Breimhorst v. Educ. Testing Serv.,* No. Civ.A. 99–3387, 2000 WL 34510621, at *7 (N.D. Cal. Mar. 27, 2000) ( "The plain words of the statute ... preclude a party from intimidating or coercing another party *not* to exercise his rights under the ADA, as well as barring interference against a person who has exercised his rights under the ADA.") (emphasis in the original); s*ee also Breimhorst,* 2000 WL 34510621, at *7 (plaintiffs' complaint that defendant's practice of "flagging" test scores of disabled students who received reasonable accommodations with the words "SCORES OBTAINED UNDER SPECIAL

CONDITIONS" interfered with test-takers' rights to seek reasonable accommodations and stated a claim for interference under § 503(b)).

Thus for purposes of § 503(b), it is irrelevant the 146 witnesses received the letter *prior* engaging in any protected activity such as speaking with EEOC in connection with its investigation of Marsh's claim; individuals need not be actively involved in asserting rights under the ADA to be protected by § 503(b).  *See Fogleman,* 283 F.3d at 571, n.5 (rejecting the view that a claim under § 503(b) is limited "to those individuals who have themselves engaged in protected activity under the ADA"); *Doe v. Kohn Nast & Graf, P.C.*, 866 F. Supp. 190, 197 (E.D. Pa. 1994) (where plaintiff alleged that his employer asked him to resign because it learned that he *planned to* file a lawsuit alleging the employer failed to renew his contract on the basis of plaintiff's HIV positive status, employee stated claim under § 503(b).).

Finally, Defendant's contention that, in order to make out a claim for interference under § 503(b), EEOC must demonstrate that each and every recipient of Defendant's June 2014 letter felt threatened or coerced by Defendant's conduct is incorrect because, as discussed above, the standard for interference is an objective one.

Because the letter has a reasonable tendency to coerce or intimidate employees to refrain from exercising their rights under the ADA, the letter constituted interference with those rights, and Defendant's motion for summary judgment on this claim should be denied.

### H.  Interference with ADA Rights Is Not Protected by the First Amendment

No court has ever held that an employer can violate the anti-retaliation or anti-interference provisions of the ADA on grounds that the employer's conduct is protected by the First Amendment.  Incredibly, Defendant suggests that its conduct should be excused because its First Amendment right to communicate with witnesses insulates it from a finding of retaliation.

ECF Dkt. 74 at 10-16.At the outset, it is obvious that the ADA – like Title VII, the ADEA and

other civil rights statutes – imposes limitations on an employer's First Amendment rights.

Certainly, Defendant would not suggest that an ADA complaint alleging that a disabled

plaintiff's employer repeatedly referred to her as "cripple" should be permitted, because to

conclude otherwise would improperly infringe on the employer's right to free speech.  *Cf.*

*Bonnell v. Lorenzo,* 241 F.3d 800, 820 (6th Cir. 2001) (granting summary judgment to employer

on professor's claim that school violated his free speech rights by terminating him over use of

language that violated the employer's sexual harassment policy).[12]

  In support of this argument, Defendant relies on a series of cases dealing with

communications with Rule 23 class members.  *See* ECF Dkt. 74 at 17.[13]  Even in the class action

---

[12]    DZNP's reliance on *John Doe, Inc. v. Mukasey,* 549 F.3d 861 (2d Cir. 2008), is
misplaced.  The *Mukasey* case reviewed the constitutionality of a provision of the Patriot Act, 18
U.S.C. § 2709, which prohibited electronic communication service providers from disclosing
that they had received a request from the FBI for information about a subscriber.  549 F.3d at
864.  The question before the *Mukasey* court was whether the requirements of the law constituted
a content-based prior restraint on speech, in violation of the First Amendment.  *Id.* at 873-74.
Here, however, there is no such prior restraint on speech.  EEOC's allegation in the complaint is
not that Defendant violated some confidentiality provision.  Rather, EEOC alleges that the
reason Defendant publicized Marsh's charge – and certain details from it – was to retaliate
against Marsh for his protected activity.

[13]    These cases are distinguishable, chiefly, because, here, there has been no prior restraint
on Defendant's speech and, furthermore, in none of the cases cited by Defendant was there an
allegation that the communication with class members was based on a retaliatory motive.  *See,
e.g., Austen v. Catterton Partners V, LP,* 831 F. Supp. 2d 559, 568-69 (D. Conn. 2011)
(imposing limitations on counsels' ability to communicate with putative Rule 23 class members
and recognizing the inherent coercion that may characterize the employment relationship);
*Mendez v. Enecon Northeast Applied Polymer Sys.,* No. 14-6736, 2015 U.S. Dist. LEXIS 90794,
at * (E.D.N.Y. July 13, 2015) (denying Defendant's motion to require plaintiff's counsel to send
curative communication where counsel had sent letter to putative class members describing
claims filed on their behalf and seeking information).

litigation context, however, where the speech usually occurs *after* civil litigation is publicly filed, courts routinely restrict or limit Defendants' communications with putative class members, particularly where there is potential for coercion.  *See, e.g., Gulf Oil Comp. v. Bernard,* 452 U.S. 89, 100 (1981); *In re Initial Pub. Offering Sec. Litig.,* 499 F. Supp. 2d 415, 418 n. 13 (S.D.N.Y. 2007).  As numerous courts have recognized, the potential for coercion is particularly strong where the recipients of the communication are employees of the Defendant.  *See, e.g., Urtubia v. B.A. Victory Corp.,* 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012) ("workplace relationship with current employees, and their knowledge of sensitive information about current and former employees, put [the employer] in a position to exercise strong coercion"); *EEOC v. Morgan Stanley & Co.,* 206 F. Supp. 2d 559, 562 (S.D.N.Y. 2002) ("Courts have found the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding communication between Defendants and potential class members."); *Kleiner v. First Nat. Bank of Atlanta,* 751 F. 2d 1193, 1206 (11th Cir. 1985) ("In the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties.").

Defendant's reliance on *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 618 (1965), in support of its First Amendment argument is similarly misplaced.  There, the Supreme Court *rejected* the employer's argument that the National Labor Relations Board's finding that the employer had violated § 8(a)(1) of the NLRA, *which prohibits interference, restraint or coercion of employees* in the exercise of their rights under the statute, constituted an unlawful infringement on the employer's right to free speech.  395 U.S. at 617.  As the *Gissel* Court held, the NLRA "merely implements the First Amendment by requiring that the expression of 'any views, argument or opinion' shall not be 'evidence of an unfair labor practice' so long as such expression contains 'no threat of reprisal or force or promise of benefit' in violation of §

8(a)(1)." *Id.*[14] This statement is perfectly consistent with the facts presented here.  Defendant

has a right to communicate with its employees, but it runs afoul of the ADA where that

communication – because of both its content and context – constitutes retaliation.  *See id.*

**I.   There is no applicable "litigation privilege" to engage in retaliation or
interference with the exercise of ADA rights.**

Defendant's argument that employers, when faced with a charge of discrimination, have

an absolute "litigation privilege" to communicate any facts, in any manner, to employees and

witnesses is without merit.  *See* ECF Dkt. 74 at 18-19.  The litigation privilege referenced in

caselaw cited by Defendant is a state law defense to claims of defamation, and Defendant has

offered no reason to think this has any application to this federal law claim brought under the

ADA.

Even if such a "privilege" existed as a defense under the ADA, it would not apply to the

circumstances here.  The conduct at issue here involves a communication to workers who were

not involved in any judicial or quasi-judicial proceeding.  Courts applying Connecticut law have

mainly limited application of the privilege to "statements made in judicial proceedings."  *See*

*Spector v. Bd. of Trustees of Community-Technical Colleges,* 463 F. Supp. 2d 234, 255 (D.

Conn. 2006) (denying motion to dismiss state law defamation claim based upon statements

---

[14]     The *Gissel* court further held that "an employer's rights cannot outweigh the equal rights
of the employees to associate freely, as those rights are embodied in § 7 and protected by §
8(a)(1) and the proviso to § 8(c).  And any balancing of those rights must take into account the
economic dependence of the employees on their employers, and the necessary tendency of the
former, because of that relationship, to pick up intended implications of the latter that might be
more readily dismissed by a more disinterested ear."  395 U.S. at 617.  Similarly, in the context
of the ADA, an employer's right to free speech cannot outweigh the equal rights of workers to
file charges and communicate freely with EEOC.  This point is further addressed above.  *See,*
*supra,* pp. 17, 20.

contained in incident reports where there was no way to determine from pleadings whether investigation in which statements were given was judicial in nature).  To the extent the privilege applies in "quasi-judicial" proceedings, an investigation by EEOC is not such a proceeding. The Connecticut Supreme Court has said that a proceeding is quasi-judicial if, among other things, the tribunal can "make binding orders and judgments" and "affect the personal property rights of private persons" – two things an EEOC investigation cannot do.  *See Craig v. Stafford Construction, Inc.,* 271 Conn. 78, 85 (2004).  Accordingly, even if the Connecticut litigation privilege could somehow operate as a defense to a violation of federal law, it would not apply to Defendant's June 17, 2014 letter.  This argument provides no basis for awarding summary judgment to Defendant in this case.

### J.   Monetary and Injunctive Relief is Available, and EEOC has Article III Standing

EEOC has standing because it has a claim for injunctive relief and is charged by Congress with enforcing the ADA and preventing future violations of the law. Accordingly, in order to reject Defendant's standing argument, the Court need not address Defendant's contention that compensatory and punitive damages are unavailable under the ADA's retaliation and interference provisions.  In any event, such damages are available, which supplies an additional basis for standing.

#### 1.   Injunctive Relief Is Available

EEOC has standing to pursue this action because "a  violation of [a federal] statute inherently constitutes an injury to the United States."  *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010).  EEOC has a claim for injunctive relief that serves the government's inherent interest in preventing future violations of the law.  "[T]he government [has] standing to enforce its own law," *id.*, and Defendant tellingly cites no case that suggests otherwise.

32

Thus Defendant is simply wrong when it suggests that EEOC has no "legally cognizable interest" in preventing future violations of one of the laws that it has been tasked by Congress with enforcing.  ECF Dkt. 74 at 45.  To the contrary, Congress has expressly charged EEOC with the function of "prevent[ing] any person from engaging in any unlawful employment practice." 42 U.S.C. § 2000e-5(a) (incorporated by reference into the ADA by 42 U.S.C. § 12117(a)).

Thus if EEOC establishes that Defendant violated the ADA, it may seek, among other things, an injunction prohibiting Defendant from engaging in similar violations of the ADA in the future.  Under the ADA, "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate."  42 U.S.C. § 2000e-5(g)(1) (incorporated by reference in to the ADA by 42 U.S.C. § 12117(a)).  "Once a violation of [the ADA] has been established, the district court has broad, albeit not unlimited, power to fashion the relief it believes appropriate."  *Bridgeport Guardians, Inc. v. City of Bridgeport*, 933 F.2d 1140, 1149 (2d Cir. 1991).  In exercising this discretion, the court is guided by the law's "goals of preventing discrimination and achieving equal employment opportunity."  *Id.*[15]

Defendant's suggestion that there is no injury or remedy sought by EEOC is without merit on this basis alone.[16]

---

[15] Moreover, it is well-established that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

[16] EEOC does seek other forms of injunctive victim-specific injunctive relief for Marsh and the 146 witnesses whose ADA rights Defendant interfered with, but the general availability of injunctive relief is sufficient to demonstrate the lack of merit in Defendant's standing argument.

### 2.   Compensatory and Punitive Damages Are Available, As Well

Even if EEOC had no valid interest in preventing future violations of the ADA, it also has claims for compensatory and punitive damages for Marsh in this action.

Defendant cites no controlling authority to support its contention that such damages are unavailable for ADA retaliation and interference claims.  EEOC concedes that some federal courts, including the Seventh and Ninth Circuit Courts of Appeals, have held that § 503(a) does not provide for compensatory and punitive damages.  *See Kramer v. Banc of Am. Sec. LLC,* 355 F.3d 961, 965 (7th Cir. 2004); *Alvarado v. Cajun Operating Co.,* 588 F.3d 1261, 1268-69 (9th Cir. 2009).

Other courts, however, including district courts in this circuit, have held to the contrary. *See, e.g., Lovejoy-Wilson v. Noco Motor Fuels, Inc., 242 F.Supp.2d 236 (W.D.N.Y. 2003)* (compensatory and punitive damages are available to remedy an employer's retaliation based on a prior complaint of disability discrimination);  *Edwards,* 390 F. Supp. 2d 225, 235 (E.D.N.Y. 2005) (explicitly rejecting the Seventh Circuit's analysis and finding compensatory and punitive damages available under ADA's anti-retaliation provision);  *see also Infantolino v. Joint Indus. Bd. of Elec. Indus.,* 582 F. Supp. 2d 351, 362 (E.D.N.Y. 2008) (concluding damages were not available, but noting that the court could not "fathom why Congress would draft a statute that effectively, even if obliquely, forecloses a damages remedy for such cases").  Indeed, the Second Circuit, while not ruling on this issue, although, has affirmed a compensatory damages award under § 503(a).  *See Muller v. Costello,* 187 F. 3d 298, 314 (2d Cir. 1999).

As discussed here, the better-reasoned decisions confirm that compensatory and punitive damages are available where an employer has violated § 503(a).  It is inconceivable that Congress would have intended to adopt a statutory scheme that protects individuals from both disability-based discrimination and retaliation based on asserting one's rights under the disability

34

provisions, but then provide effective remedies only for the underlying discrimination claims and not for retaliation claims. *See Burlington Northern,* 548 U.S. at 66 (emphasizing that the anti-retaliation provisions of federal anti-discrimination laws must be read broadly to effectuate the underlying enforcement scheme).  Defendant's argument that the injunctive relief sought by EEOC is "redundant and useless," *see* ECF Dkt. 74 at 44, should similarly be rejected.

### b. EEOC may seek monetary relief for Marsh pursuant to Plaintiff's section 503(a) claim.

Section 503(c) of the ADA states that the "remedies and procedures available under sections 12117, 12133, and 12188 of this title [sections 107, 203, and 308 of the ADA] shall be available to aggrieved persons for violation of subsections (a) and (b) of the section…"  42 U.S.C. § 12203(c).  This statutory scheme establishes that the remedies available for employment-based retaliation claims under § 503 are coextensive with the remedies available at § 107, 42 U.S.C. § 12117, which, in turn, are coextensive with the remedies available pursuant to Title VII, including those at section 706(g), 42 U.S.C. § 2000e-5(g).  While § 706(g) does not authorize compensatory and punitive damages, in the 1991 Civil Rights Act, Congress amended 42 U.S.C. § 1981 to permit damages in Title VII and ADA cases, like this, brought under § 706 to seek relief for intentional discrimination.  *See* 42 U.S.C. § 1981(a)(1) (authorizing damages for Title VII cases brought under the powers of § 706); 42 U.S.C. § 1981a(a)(2) (authorizing compensatory and punitive damages in ADA cases brought under the powers of § 706).

Accordingly, because compensatory and punitive damages are available for Title VII violations under section 706(g), 42 U.S.C. § 2000e-5(g), they are also available under § 107 of the ADA, 42 U.S.C. § 12117 (which incorporates the remedies of § 706(g)), and therefore – pursuant to § 503(c) of the ADA (which incorporates the remedies and procedures of § 107 of the ADA) – for the § 503(a) claim asserted here.  *See Edwards,*  390 F. Supp. 2d at 235 (because

the "retaliation provision in the ADA refers the reader to 42 U.S.C. § 12117 for its remedy, which in turn adopts the remedies set forth in Title VII, specifically 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981a(a)(2) [...], the remedies for violations of § 12230 of the ADA and § 12117 of the ADA are coextensive with the remedies available in a private cause of action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5."); *Baker v. Windsor Republic Doors,* 635 F. Supp. 2d 765, 769 (W.D. Tenn. 2009) (affirming jury award of compensatory damages on plaintiff's retaliation claim under ADA and finding that, to rule otherwise, would be contrary to Congress's intent "to enact a co-extensive cause of action for retaliation when it proscribed intentional discrimination at § 12112." ).[17]

Thus, compensatory and punitive damages are available under § 503(a) of the ADA by a straight, albeit extended, pathway via reference in section 1981a(a)(2) to § 706 of Title VII, which, in turn, provides the remedies available under section 107 of the ADA, which, in turn, supplies the remedies authorized by § 503(c). Because the damages are available under this incorporation pathway, there was no need for Congress explicitly to list the retaliation provision. *See, e.g.,* Mark C. Weber, *Workplace Harassment Claims under the Americans with Disabilities*

---

[17] In support of its conclusion, the *Baker* court relied on several recent Supreme Court decisions finding that intentional discrimination encompasses retaliation. 635 F. Supp. 2d at 769-70 (discussing *Jackson v. Birmingham Board of Education,* 544 U.S. 167 (2005) (Title IX case holding that a private right of action for retaliation is contained within statutory prohibition against intentional discrimination on the basis of sex); *CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 454-56 (2008) (holding that a private right of action for retaliation is included within the language of 42 U.S.C. § 1981, which ensures right of non-white people to "make and enforce contracts"); *Gomez-Perez v. Potter,* 553 U.S. 474, 481 (2008) (interpreting "the ADEA federal-sector provision's prohibition of 'discrimination based on age' as … proscribing retaliation," although the Act contained no explicit prohibition against federal-sector retaliation) (internal citation omitted)). The Sixth Circuit affirmed the decision in *Baker*, although on other grounds and without reaching this particular issue. *See Baker v. Windsor Republic Doors, Inc.,* 414, F. App'x 764 (6th Cir. 2011).

*Act: A New Interpretation,* 14 Stan. L. & Pol'y Rev. 241, 262 (2003) (concluding the "incorporation-by-reference pathway leads in a straight line from ADA Title V's section 12203 to ADA Titles I and II to the Civil Rights Act of 1964 to the Civil Rights Act of 1991, placing section 12203 squarely within section 1981a.").[18] In refusing to follow the incorporation-by-reference pathway through the relevant sections of the three related statutes, Defendant's argument – as well as the *Kramer* and *Alvarado* courts' "plain language" analysis – contravene the Supreme Court's directive that courts should examine statutory language "in light of context, structure, and related statutory provisions."  *Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 558 (2005); *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997) (courts must consider the "broad context of the statute as a whole.").

The three statutes – the ADA, Title VII and the Civil Rights Act of 1991 – are linked, by explicit references, and when they are read together, it is apparent from the statutory language itself that damages are available in an ADA retaliation action.  By failing to read the relevant statutes as a whole, Defendant – and the court decisions it cites – focuses too narrowly only on the damages provision itself.  In considering the remedies available in an ADA retaliation case, it is indefensible to focus on an amendment providing damages and ignore the language of the primary statute initially providing the right of action.  The Supreme Court has cautioned that statutory interpretation does not "look at one work or one provision in isolation" but rather

---

[18] Congress's decision not to enumerate claims under § 503 when amending § 1981 makes sense given the text and scope of § 503.  Reference to section 503 would have expanded the scope of remedies available for retaliation claims brought under the public accommodations and public services provisions of Title II and III of the ADA, when all Congress intended in adding the damages provisions of section 1981 was to provide additional remedies for intentional *employment* discrimination claims.  *See* Civil Rights Act of 1991, Pub. L. 102-166, Sec. 3 and Sec. 102.

"looks to the statutory scheme for clarification and contextual reference." *Smith v. United States,* 508 U.S. 223, 233-34 (1993).  If one starts with the ADA retaliation provision and traces its incorporation provisions back to Title VII, and then considers the Civil Rights Act amendment providing damages for intentional discrimination claims brought under section 706 of Title VII, it is clear that those damages are available for ADA retaliation claims against employers. As such, Defendant's motion to dismiss Plaintiff's claim for compensatory and punitive damages should be denied.

**V.    CONCLUSION**

Defendant is not entitled to judgment as a matter of law on EEOC's claim that Defendant has violated the ADA's anti-retaliation provision.  The record shows that there are disputed issues of material fact that must be submitted to a finder of fact.  Defendant's argument that its conduct and action are protected by the First Amendment is misplaced and unsupported.   A finder of fact should determine whether Defendant's asserted legitimate business reason for the timing and content of the letter is a mere pretext for retaliation.

Defendant's motion for summary judgment should be denied in its entirety.

Respectfully submitted,

Rosemary DiSavino (phv08369)
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Two Gateway Center, Suite 1703
283-289 Market Street
Newark, N.J. 07102
(973)645-6430
rosemary.disavino@eeoc.gov

38

s/ Justin Mulaire
Supervisory Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3744
justin.mulaire@eeoc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2016, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which then electronically notified all those registered as CM/ECF participants in this case.

s/ Justin Mulaire

39