# UNITED STATE DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | : |
| | : |
| | : |
| **Plaintiff,** | : |
| | :    **No. 15-CV-01416** |
| **v.** | : |
| | : |
| | : |
| **DAY & ZIMMERMANN, NPS, INC.,** | : |
| | : |
| | : |
| **Defendant.** | : |
| | : |

BRIEF OF STATE OF CONNECTICUT OFFICE OF PROTECTION AND ADVOCACY
FOR PERSONS WITH DISABILITIES, DISABILITY RIGHTS NEW YORK, AND
DISABILITY RIGHTS VERMONT AS *AMICI CURIAE*
SUPPORTING THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION.

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

STATEMENT OF INTEREST .......................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    INTRODUCTION ................................................................................................ 2

II.    Disclosure of a Charging Party's Identity, Including Information about Disabilities and Requested Accommodations, is Retaliation against the Charging Party As Well as Interference with Future Claims by Other Employees ......................................................................................................... 3

    A. Disclosing Personal Information about an EEOC Charging Party is Retaliation under the ADA ............................................................................. 3

    B. Disclosure of a Charging Party's Private Information, Including Information about his Identity, Symptoms and Accommodation Request, Violates the Anti-Interference Provision of the ADA ...................................................................... 7

III.    The First Amendment Does Not Override Civil Rights Protections ...................... 8

    A. The ADA and other Civil Rights Laws Prohibit Disability Disclosure ............ 8

    B. Employers Do Not Have an Unlimited First Amendment Right to Engage in Discriminatory Speech Concerning Their Employees ....................................... 8

CONCLUSION ................................................................................................................. 9

## TABLE OF AUTHORITIES

### Cases

*Baty v. Willamette Indus., Inc.*, No. 96–2181–JWL, 1997 WL 292123 (D. Kan. May 1, 2007).... 9

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ......................................................... 9

*Booth v. Pasco Cty., Fla.*, 829 F. Supp. 2d 1180 (M.D. Fla. 2011)................................. 4

*Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003)............................................... 7

Defendant Day & Zimmerman NPS, Inc.'s Brief In Support of Its Motion to Dismiss the Complaint, *EEOC v. Day & Zimmerman*, 3:15-CV-01416 (VAB) (Nov. 30, 2015)................. 6

*Doe v. U.S. Postal Service*, 317 F.3d 339 (D.C. Cir. 2003)........................................... 8

*EEOC v. L.B. Foster,* 123 F.3d 746 (3d Cir. 1997) ...................................................... 8

*Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002)....................................... 7

*Franklin v. Local 2 of the Sheet Metal Workers Int'l Ass'n*, 565 F.3d 508 (8th Cir. 2009) .......... 4

*Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481 (7th Cir. 2015)........................... 3

*Halliburton, Inc. v. Admin Review Bd.,* 771 F. 3d 254 (5th Cir. 2014) ......................... 4

Letter from Day & Zimmerman NPS, Inc. Re: Information Request by Equal Employment Opportunity Commission, Exhibit S, Defendant's Motion to Dismiss the Complaint, *Equal Employment Opportunity Commission v. Day & Zimmermann NPS, Inc.*, No. 15-CV-01416-VAB (D. Conn. Oct. 21, 2016), ECF No. 75-2 .......................................................... 6

*N.L.R.B. v. Marine Optical, Inc.*, 671 F.2d 11 (1st Cir. 1982) .................................... 8

*New York Univ. Med. Ctr. v. N.L.R.B.*, 156 F.3d 405 (2d Cir. 1998) ........................... 7

*Thompson v. North American Stainless, L.P.*, 562 U.S. 170 (2011)............................... 3

*Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997)............................................... 9

### Statutes

42 U.S.C. § 12102.............................................................................................................. 6

42 U.S.C. § 12112(d) ......................................................................................................... 8

42 U.S.C. § 12203(a) ................................................................................................................ 3

42 U.S.C. § 12203(b) ................................................................................................................ 7

Conn. Gen. Stat. § 46a-11(7) .................................................................................................... 1

## Other Authorities

Bureau of Labor Statistics. Economic News Release. "Persons with a Disability: Labor Force Characteristics Summary" (June 21, 2016) (on file with author, http://www.bls.gov/news.release/disabl.nr0.htm). ................................................................... 4

Benedick, Marc. Jr. *Employment Discrimination Against Persons with Disabilities: Evidence from Matched Pair Testing* (July 2016) (on file with author, http://www.bendickegan.com/pdf/Bendick_Retail_Disability_Testing_Study_July_106.pdf)... 5

Ameri, Mason et al. *The Disability Employment Puzzle: A Field Experiment on Employer Hiring Behavior*. NAT'L BUREAU OF ECON. RESEARCH, Working Paper No. 21560 (2015) ................. 5

Daglin, Rebecca Spirito & Bellini, James. "Invisible Disability Disclosure in an Employment Interview: Impact on Employers' Hiring Decisions and Views of Employability," 52 REHABILITATION COUNSELING BULLETIN 6 (Oct. 2008) .......................................................... 5

Scheid, Teresa L. "Stigma as a Barrier to Employment: Mental Disability and the Americans with Disabilities Act. " 28 INTERNATIONAL JOURNAL OF LAW AND PSYCHIATRY 670 (Nov.-Dec. 2005) .................................................................................................................................... 5

## STATEMENT OF INTEREST

Amici Curiae are the Protection and Advocacy Systems for Connecticut, New York, and Vermont, who together represent and advocate for individuals with disabilities in the states covered by the United States Court of Appeals for the Second Circuit.

**The State of Connecticut Office of Protection and Advocacy for Persons with Disabilities** ("OPA") is the federally authorized Protection and Advocacy System for people with disabilities in Connecticut.  OPA "has a special responsibility for the care, treatment, education, rehabilitation of and advocacy for its disabled citizens" and the authority to "represent, appear, intervene in or bring an action on behalf of any person with disability . . . in any proceeding before any court . . . in [the] state in which matters related to [persons with disabilities] are in issue."  Conn. Gen. Stat. § 46a-11(7).  Issues relating to the employment of people with disabilities are a priority for OPA, particularly as they concern employment discrimination.

**Disability Rights New York** ("DRNY") is the federally authorized Protection and Advocacy System for people with disabilities in New York. DRNY provides free legal services and other advocacy services to advance and protect the rights of people with disabilities. DRNY advocates to ensure that its clients are free from abuse and neglect and from unlawful discrimination. DRNY provides these services under federal grant funded mandates that have been established by Congress to protect and advocate for the rights, safety, and autonomy of people with disabilities. Issues relating to the employment of people with disabilities are a priority for DRNY, particularly as they concern employment discrimination.

**Disability Rights Vermont** ("DRVT") is the federally authorized Protection and Advocacy System for people with disabilities in Vermont. DRVT provides free legal services

1

and other advocacy services to advance and protect the rights of people with disabilities. DRVT advocates to ensure that its clients are free from abuse and neglect and from unlawful discrimination. DRVT provides these services under federal grant funded mandates that have been established by Congress to protect and advocate for the rights, safety and autonomy of people with disabilities. Issues relating to the employment of people with disabilities are a priority for DRVT, particularly as they concern employment discrimination.

*Amici curiae* have a direct interest in the enforcement of the Americans with Disabilities Act ("ADA") as applied to the employment setting.  Day & Zimmermann, NPS, Inc. ("DZNPS") ignores federal law and regulations when it incorrectly asserts that the First Amendment allows employers to disclose private, disability-related information to an employee's current or former colleagues in a manner that punishes those complaining of discrimination under the ADA and interferes with the ADA rights of others.  The negative impact on the ability of people with disabilities to obtain or maintain employment that would result from the failure to protect such employees from the type of retaliatory conduct employed by DZNPS is significant.

## ARGUMENT

### I.    INTRODUCTION

In October 2012, the Charging Party, a former employee of DZNPS, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that DZNPS failed to accommodate his disability and terminated his employment in retaliation for his accommodation request. The EEOC has alleged claims of retaliation and interference against DZNPS in connection with a letter DZNPS sent to employees identified by the EEOC as potential witnesses in its investigation of the charge. The letter disclosed the Charging Party's

identity as a person with a disability, his personal contact information, and details about the accommodations he had requested, which revealed private information about the nature of his disability.  As a result, the EEOC alleges that DZNPS violated both the retaliation and interference provisions of the ADA.  For the reasons stated below, EEOC's Motion for Summary Judgment on the interference claim should be granted and DZNPS' Motion for Summary Judgment should be denied in its entirety.

II.   **Disclosure of a Charging Party's Identity, Including Information about Disabilities and Requested Accommodations, is Retaliation against the Charging Party As Well as Interference with Future Claims by Other Employees**

A. **Disclosing Personal Information about an EEOC Charging Party is Retaliation under the ADA**

Sharing identifying information about an employee's EEOC charge with coworkers or with the general public is retaliation under the ADA.  Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" involving rights protected by the ADA. 42 U.S.C. § 12203(a). As with Title VII, [t]he ADA's "anti-retaliation provision must be construed to cover a broad range of employer conduct." *Thompson v. North American Stainless, L.P.*, 562 U.S. 170, 173 (2011). The statute "prohibits any employer action that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 174.

Federal courts have held that disclosing information about an employee's disability is retaliation under the ADA and parallel statutes. In *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485-87 (7th Cir. 2015), the Seventh Circuit held that naming EEOC claimants in Security and

3

Exchange Commission ("SEC") filings, which are available to the public, and describing their claims as meritless, is retaliation under Title VII. The court stated that disclosing the identity of claimants and casting doubt on the merits of their claims could dissuade workers from filing or supporting other charges of discrimination because of the potential effect on their future employment prospects. Similarly, in *Booth v. Pasco Cty., Fla.*, 829 F. Supp. 2d 1180, 1192, 1202 (M.D. Fla. 2011), the court found that an employer's approval of a union communication sent to the plaintiffs' colleagues regarding their employment discrimination suit that identified the plaintiffs by name and cast doubt on the merits of their claims, would deter reasonable employees from filing discrimination charges in the future. In *Halliburton, Inc. v. Admin Review Bd.,* 771 F. 3d 254, 262 (5th Cir. 2014), the court held that an employer sent a message of disapproval to company employees by identifying a complaining employee. *See also Franklin v. Local 2 of the Sheet Metal Workers Int'l Ass'n*, 565 F.3d 508, 521 (8th Cir. 2009) (reversing the District Court's dismissal on summary judgment of a retaliation claim for publicly announcing names of members who had filed EEOC charges).

According to the U.S. Bureau of Labor Statistics, in 2015 only 17.5% of persons with disabilities were employed, compared with 65% of the general population. Bureau of Labor Statistics. Economic News Release. "Persons with a Disability: Labor Force Characteristics Summary" (June 21, 2016) (on file with author, http://www.bls.gov/news.release/disabl.nr0.htm).

People with disabilities face constant challenges in obtaining employment, including employer discrimination. In a recent Matched Pair Testing Study, applicants with disabilities were only 27% as likely to receive a job offer as their equally-qualified testing partners. In all, 41% of the retailers tested were documented as discriminating against job applicants with

disabilities who were capable of performing the jobs for which they applied. Marc Benedick, Jr., *Employment Discrimination Against Persons with Disabilities: Evidence from Matched Pair Testing* (July 2016) (on file with author, http://www.bendickegan.com/pdf/Bendick_Retail _Disability_Testing_Study_July_106.pdf).

In another study, fictional applicants with disabilities received 26% fewer expressions of employer interest than those without disabilities. The disability gap was concentrated among more experienced applicants.  Mason Ameri et al., *The Disability Employment Puzzle: A Field Experiment on Employer Hiring Behavior*, NAT'L BUREAU OF ECON. RESEARCH, Working Paper No. 21560, 2015).  As these studies demonstrate, it is indisputable that many people with disabilities wish to keep the fact of their disabilities private in order to avoid discrimination.

In this case, DZNPS disclosed private and potentially harmful information about the Charging Party to his former colleagues and union members. Such a disclosure can be especially detrimental in the union workplace, where the employee relies on the other union members for job referrals and character references.  DZNPS' unreasonable and unwarranted disclosures left the Charging Party vulnerable to stigmatization and harassment by other union members and prospective employers on the basis of his disability. *See* Rebecca Spirito Daglin & James Bellini, "Invisible Disability Disclosure in an Employment Interview: Impact on Employers' Hiring Decisions and Views of Employability," 52 REHABILITATION COUNSELING BULLETIN 6 (Oct. 2008) (potential employees with disabilities are viewed less favorably by employers than applicants without disabilities), Teresa L. Scheid, "Stigma as a Barrier to Employment: Mental Disability and the Americans with Disabilities Act," 28 INTERNATIONAL JOURNAL OF LAW AND PSYCHIATRY 670 (Nov.-Dec. 2005) (same).

DZNPS's disclosure of the Charging Party's identity and the nature of his accommodation requests is particularly concerning because it enabled his former coworkers and fellow union members to infer his type of disability.[1]   Disclosing the accommodations that an individual with a disability has requested may reveal the nature of the disability, if not the diagnosis itself. For instance, disclosing that a person requested that she be allowed to keep food at her desk and take breaks for insulin injections will reveal she has diabetes. Disclosing that a person has asked to be moved to an office closer to the bathroom and be allowed to take frequent bathroom breaks will reveal that he is incontinent or has a bowel issue. In the present case, the accommodation request revealed radiation sensitivity, which is an uncommon symptom and indicated that the Charging Party must have one of a handful of diagnoses.  Letter from Day & Zimmerman NPS, Inc. Re: Information Request by Equal Employment Opportunity Commission, Exhibit S, Defendant's Motion to Dismiss the Complaint, *Equal Employment Opportunity Commission v. Day & Zimmermann NPS, Inc.*, No. 15-CV-01416-VAB (D. Conn. Oct. 21, 2016), ECF No. 75-2.

Disclosure of the nature of Charging Parties' accommodations or disabilities makes them vulnerable to stigmatization by coworkers and potential employers alike, potentially damaging future job prospects and causing ostracism. At the same time, disclosure of the Charging Parties' identities makes it easier for coworkers and prospective employers take negative action against them on the basis of disability and protected activity. These consequences cannot be described as a mere "bruised ego" as DZNPS dismissively claims.  Defendant Day & Zimmerman NPS, Inc.'s Brief In Support of Its Motion to Dismiss the Complaint, *EEOC v. Day & Zimmerman*, 3:15-CV-

---

[1]The act of filing an EEOC charge does not specifically indicate that the Charging Party has a disability, as a charge may be filed on behalf of another employee or a class of employees, or because the aggrieved individual is regarded as having a disability, or has a record of a disability. 42 U.S.C. § 12102.

01416 (VAB), at 27 (Nov. 30, 2015). Such disclosures have powerful consequences on Charging Parties' daily life, which will dissuade them from continuing to pursue claims of discrimination and other employees from asserting their rights.

### B. Disclosure of a Charging Party's Private Information, Including Information about his Identity, Symptoms and Accommodation Request, Violates the Anti-Interference Provision of the ADA

The employer's disclosure of an employee's disability will deter other individuals from exercising ADA rights for fear that their own disabilities may also be disclosed. As such, DZNPS's actions violate the ADA's anti-interference provision. The anti-interference provision states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right" protected by the ADA. 42 U.S.C. § 12203(b). The ADA's anti-interference provision protects a broader class of employees against a broader range of harms than its anti-retaliation provision discussed above. *See Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003). Courts have interpreted the anti-interference provision of the National Labor Relations Act, which is similar to the ADA's parallel provision and is used as a model for interpreting the ADA provision, to prohibit actions that have "a reasonable tendency to coerce or intimidate employees [who file or wish to file claims] regardless of whether they are actually coerced." *New York Univ. Med. Ctr. v. N.L.R.B.*, 156 F.3d 405, 410 (2d Cir. 1998); *see also Fogleman v. Mercy Hosp.*, *Inc.*, 283 F.3d 561, 570 (3d Cir. 2002). This is an objective inquiry into whether the employer's conduct would have a reasonable tendency to chill protected conduct by a reasonable employee. *New York Univ. Med. Ctr.*, 156 F.3d at 410. "It is the coercive tendency of employer statements, not their actual effect, that constitute a violation of the act." *N.L.R.B. v. Marine Optical, Inc.*, 671 F.2d 11,

18 (1st Cir. 1982); *Cf. EEOC v. L.B. Foster,* 123 F.3d 746, 754 (3d Cir. 1997) ("An employer who retaliates cannot escape liability merely because the retaliation falls short of its intended result.").

As discussed in Section II.A and incorporated here by reference, disclosure of Charging Parties' private information, particularly information regarding the nature of their disabilities, makes those employees vulnerable to stigmatization by coworkers and prospective employers. The effects of stigmatization will dissuade employees from making or supporting charges of discrimination.

### III.    The First Amendment Does Not Override Civil Rights Protections

#### A.  The ADA and other Civil Rights Laws Prohibit Disability Disclosure

The ADA prohibits disability disclosure by limiting an employer's right to conduct medical exams and inquiries.  42 U.S.C. § 12112(d).  The ADA regulations recognize the potentially negative impact of disability disclosure by prohibiting the disclosure of records of an employee's medical condition or history except in limited circumstances. 29 C.F.R. § 1630.14(c).   It is impermissible to inform an employee's coworkers about the employee's disabilities except in limited circumstances. For example, a supervisor may be told about a disability if an employee needs a reasonable accommodation, or first aid and safety personnel may need to be given medical information if the employee is likely to need medical assistance in the workplace. *Id.* Otherwise, disclosure of a disability is prohibited. *Id.*; *see also Doe v. U.S. Postal Service,* 317 F.3d 339, 341, 343-44 (D.C. Cir. 2003) (supervisor's disclosure of employee's HIV status following employee's disclosure of his status on an FMLA application to his coworkers violated Section 504 of the Rehabilitation Act of 1973).

#### B.  Employers Do Not Have an Unlimited First Amendment Right to Engage in Discriminatory Speech Concerning Their Employees

Federal courts are clear that in the context of civil rights legislation such as the ADA, employers do not have an unlimited First Amendment right to engage in discriminatory speech concerning their employees. When an employee is subject to verbal harassment by an employer, the employer has no defense under the First Amendment if "a harm has been and continues to be inflicted on identifiable individuals and the context of the speech is at the heart of the cause of action." *Baty v. Willamette Indus.*, *Inc.*, No. 96–2181–JWL, 1997 WL 292123, at *7 (D. Kan. May 1, 2007) (holding that under Title VII, expressive discriminatory conduct in the form of sexual harassment is not protected speech). "Similar to blackmail or threats of violence, discriminatory conduct in the form of a hostile work environment are not protected speech; the regulation of discriminatory speech in the workplace constitutes nothing more than a time, place, and manner regulation of speech, which does not offend constitutional principles; the victims of workplace discrimination are captive audiences and the free speech guarantee permits great latitude in protecting captive audiences; if the speech at issue is treated as fully protected, the government's compelling interest in eradicating discrimination in the workplace permits such regulation…." *Id.*

Similarly, the First Amendment does not protect the right of an employer to proselytize to its employees, subject them to religious lectures, or otherwise harass them because they do not share its religious beliefs. *See Venters v. City of Delphi*, 123 F.3d 956, 971 (7th Cir. 1997). Finally, workplace policies that limit an employee's ability to use derogatory words do not constitute a First Amendment violation. *See Bonnell v. Lorenzo*, 241 F.3d 800, 820 (6th Cir. 2001).

## CONCLUSION

For the foregoing reasons, amici curiae respectfully request that this Court grant EEOC's motion for summary judgment and deny DZNPS's motion for summary judgment.

9

November 22, 2016
Hartford, Connecticut

Respectfully Submitted,

Cliff Zucker
General Counsel
DISABILITY RIGHTS NEW YORK
725 Broadway, Suite 450
Albany, NY 11207
(518) 432-7861
Cliff.Zucker@drny.org

A.J. Ruben
Supervising Attorney
DISABILITY RIGHTS VERMONT
141 Main S., Ste. 7
Montpelier, VT 06602
(802) 229-1355
AJ@DisabilityRightsVT.org

By:     /s/ Nancy B. Alisberg

Nancy B. Alisberg
CONNECTICUT OFFICE OF PROTECTION AND
ADVOCACY FOR PERSONS WITH DISABILITIES
Counsel for *Amici Curiae*
60B Weston Street
Hartford, CT 06120-1551
860-297-4397
Nancy.Alisberg@ct.gov

10

CERTIFICATE OF SERVICE

It is hereby certified that on **November 22, 2015**, the foregoing brief was electronically filed with

the Clerk of the Court by using the Court's ECF system. Counsel for Plaintiff and counsel for

Defendant are registered in this case on ECF and will be served with the brief via the ECF system.

By:    /s/ Nancy B. Alisberg        

Nancy B. Alisberg
CONNECTICUT OFFICE OF PROTECTION AND
ADVOCACY FOR PERSONS WITH DISABILITIES
Counsel for *Amici Curiae*
60B Weston Street
Hartford, CT 06120-1551
860-297-4397
Nancy.Alisberg@ct.gov

11